ANDRÉS SORIANO TAVÁREZ, demandante y recurrido, *v.* JOSÉ D. RIVERA ANAYA, demandado y recurrente.

*Número:* R-78-404     *Resuelto:* 30 de abril de 1979

---

664

*José H. Rivera Cintrón y René Maldonado Villalonga,* abogados del recurrente; *Víctor Rivera Colón,* abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR MARTÍN emitió la opinión del Tribunal.

En una acción de triple daño por cánones de alquiler cobrados en exceso de los fijados bajo la Ley de Alquileres Ra-

zonables, 17 L.P.R.A. sec. 181, esp. Sec. 188, el tribunal de instancia condenó al dueño arrendador de una propiedad a pagar al inquilino demandante la suma de $10,080.00 correspondiente a tres veces los cánones cobrados durante el período en que el inquilino tuvo la propiedad bajo su control. Le condenó además al pago de $1,500.00 por concepto de honorarios de abogado. No conforme, el dueño demandado acude ante nos solicitando revisión de la sentencia.

La unidad de alquiler que es objeto del presente recurso fue inscrita ante la Administración de Estabilización Económica, agencia antecesora del Departamento de Asuntos del Consumidor, la que fijó en 1ro. de diciembre de 1963 un canon máximo mensual de $130.00, cuando se utilizaba por un inquilino anterior al inquilino demandante parcialmente como residencia y parcialmente como comercio. Posteriormente, en septiembre de 1964, el dueño arrendó la propiedad a un nuevo inquilino quien la acondicionó para establecer allí un dispensario médico, pactándose un canon mensual de $250.00. Algún tiempo después se desocupó la propiedad, y el dueño la arrendó, con las mejoras habidas, al inquilino demandante por el término de dos años por un canon, igual al anterior, de $250 mensuales, en virtud de contrato que otorgaran mediante escritura pública. A su vencimiento, el contrato fue renovado por un año adicional, quedando subsiguientemente renovado de mes a mes.

■ Una vez que el inquilino demandante ocupó el local, procedió a dividirlo en dos locales sin el conocimiento del dueño. Estableció en uno un negocio de cafetería que él mismo operaba y subarrendó el otro, en violación del canon fijado por el organismo rector, a razón de $225 quincenales, sin la autorización del dueño, sin que haya evidencia de que hubiese sido motivo de gran necesidad el subarrendar o ceder el uso de la propiedad arrendada, según lo requiere la Ley, 17 L.P.R.A. sec. 193(2A), y sin observar el requisito de Ley que dispone que el alquiler razonable fijado por el Administrador

debe aplicarse tanto a beneficio del arrendatario principal como del subarrendatario, y que el subarrendador no podrá percibir por concepto de subarrendamiento un alquiler mayor del que proporcionalmente corresponde a la parte de la propiedad subarrendada. 17 L.P.R.A. sec. 206(a). Vendió luego el negocio de cafetería continuando el adquirente en el local por un canon de $175 mensuales. Recibía entonces el inquilino demandante $175 por el local de la cafetería y $450 por el otro local, o sea, un canon total mensual de $625. No obstante, continuaba pagando al dueño recurrente los $250 pactados originalmente por contrato, de suerte que obtenía un beneficio mensual de $375 por el subarrendamiento de la propiedad, sabiendo que el canon mensual autorizado por la agencia reguladora era de $130 mensuales.

No obstante estar cobrando a los subarrendatarios $495 mensuales en exceso del canon autorizado, se queja de que el dueño, al exigirle el pago de $250 mensuales, le está cobrando $120 por sobre el máximo legal. Por ello instó una acción de triple daño contra el dueño por los cánones que había pagado sobre los $130 fijados originalmente por el organismo regulador. En otras palabras, el demandante recurrido invoca la protección de la Ley de Alquileres Razonables en cuanto al pago de un canon en exceso de lo autorizado, mientras él, por su parte, exige de sus arrendatarios una suma que es más de cuatro veces la autorizada por la misma ley.

■ Esta situación tan peculiar nos obliga a revisar una vez más el alcance de la Ley de Alquileres Razonables con ánimo de sondear otra vez sus objetivos, reconocer los intereses sociales que protege y, finalmente, determinar cuál ha de ser el ejercicio prudente de ciertas acciones que en ella se tutelan. Concedimos al demandante recurrido una oportunidad para que explicara la situación paradójica en la que él se ha colocado a pesar de la norma jurídica reconocida de que los derechos deben ejercitarse conforme a las exigencias de la

buena fe y de que la ley no ampara el abuso del derecho o su ejercicio antisocial. Su comparecencia no nos persuade.

El problema complejo que representa la contratación moderna de arrendamientos urbanos no es exclusivo de Puerto Rico. Las jurisdicciones donde priva el derecho civil se enfrentan a la misma situación al tornarse insuficiente para regir las complejidades de nuestro siglo la regulación que sobre los arrendamientos urbanos ofrecen los códigos aprobados en el pasado siglo. Condómines Valls, F. de A., *Arrendamientos Urbanos*, págs. 17–19; Madrid, 1956; Bonet Correa, J., *La Legislación de arrendamientos urbanos y las cláusulas de estabilización de la renta*, en 220 Rev. Legis. y Juris., pág. 213 y ss. (1966).

Señala la doctrina que para regir la contratación de arrendamientos se produjo en la Europa de la postguerra copiosísima legislación en el orden civil o administrativo así como en el penal. Quintano Ripollés, A., *Tratado de la Parte Especial del Derecho Penal*, Tomo III, *Infracciones sobre el Patrimonio, Daños y Leyes Especiales*, pág. 210; Madrid, 1960. También en América Latina se advirtieron tempranas reacciones en el mismo sentido. Arias C., *Derecho de Arrendamientos Urbanos*, pág. 27 y ss., Buenos Aires, 1966. En Puerto Rico encaramos también el problema causado por la escasez de locales de vivienda y comercio en la era de la postguerra, adoptando la Ley de Alquileres Razonables, Ley Núm. 464 del 25 de abril de 1946, 17 L.P.R.A. sec. 181 y ss., para sustituir medidas estadounidenses de emergencia de guerra que rigieron aquí hasta entonces. Ver Notas Monográficas en XX Rev. Jur. U.P.R. 276 (1951) y XXXIV Rev. Jur. U.P.R. 423–425 (1964).

Nuestra Ley de Alquileres Razonables provee un elaborado esquema sobre la materia de arrendamientos que complementa y a veces sustituye las normas del Código Civil. Desde su aprobación, hace ya casi siete lustros, aquélla ha sido objeto de varias enmiendas dirigidas a perfeccionar sus

mecanismos. No obstante, nuestras interpretaciones de la Ley han sido, sin duda, abarcadoras, profundas y creativas con ánimo de ajustar su rigor a una sociedad que, en los treinta y tres años de su vigencia, ha sufrido cambios radicales en todos los órdenes. Así por ejemplo, reconocimos en *Coel, Inc.* v. *Policlínica Arzuaga, Inc.*, 100 D.P.R. 445, 449 (1972), la validez de un pacto entre arrendador y arrendatario para aumentar el canon de alquiler, luego de mejorarse la propiedad, aun sin mediar la sanción del Administrador; en *Agulló* v. *ASERCO*, 104 D.P.R. 244, 249 (1975), hicimos aplicable el plazo de prescripción de cinco años establecido en el Art. 1866 del Código Civil a las acciones para obtener el reintegro de cánones pagados en exceso del canon regulado; y en *Balbás Peña* v. *ASERCO*, 104 D.P.R. 815, 823 (1976), al revisar una decisión administrativa que congelaba el valor de tasación de solares en los que radicaban estructuras pertenecientes a terceros al que regía en 1ro. de octubre de 1942, reconocimos que no podía establecerse un rendimiento distinto por el hecho de haberse arrendado antes o después de la fecha crítica señalada.

■ Por otro lado, en *Agulló* v. *ASERCO*, supra, siguiendo nuestras decisiones en *Vda. de Hernández* v. *Pérez Colón, Admor.*, 94 D.P.R. 807, 814 (1967), *Blanco Rojo* v. *A.E.E.*, 96 D.P.R. 231, 235 (1968), *Flores* v. *Flores Toledo*, 101 D.P.R. 61, 66 (1973), y *B. Fortaleza Corp.* v. *Bouzá*, 101 D.P.R. 270, 274 *et seq.* (1973), resolvimos que la Ley Núm. 67 de 19 de junio de 1964, 17 L.P.R.A. sec. 184(b), que exime del control de la Ley de Alquileres Razonables a las propiedades cuya renta mensual fuese igual o mayor que el canon mínimo señalado por dicha Ley, opera de pleno derecho, esto es, por sí misma, sin que sea necesario para su vigencia el visto bueno del Administrador. De suerte que basta con que la unidad de alquiler dedicada a vivienda se arriende por un canon de $200 o más, o la de comercio se pacte por un canon de $400 o más, para que se aplique la excepción de la

mencionada Ley Núm. 67. En el caso de autos el demandante recurrido al cobrar $625 mensuales por el alquiler de la unidad comercial, según los casos citados precedentemente, excluyó voluntariamente la propiedad en cuestión del ámbito y protección de la Ley de Alquileres Razonables. Su propio e intencional curso de acción le privó de remedio alguno contra el dueño de la propiedad.

Además, el fundamental postulado jurídico que demanda que todo derecho o facultad que la ley consagre, se ejercite siempre razonable, justa y legítimamente quedó burlado por la actuación del demandante recurrente. Véanse las Sentencias del Tribunal Supremo de España del 14 de febrero de 1944, 25 de octubre de 1950, 6 de octubre de 1953 y 4 de octubre de 1961. Se trata, ni más ni menos, de la figura del abuso del derecho, la cual es de antigua estirpe. Surge en Roma, como arma utilizada para evitar los actos de emulación. Luego, superando esa estrecha concepción inicial, comenzó a dibujarse en la jurisprudencia francesa del siglo XIX para vedar algunos comportamientos o actividades que, sin embargo, se encontraban dentro de los límites fijados por la codificación napoleónica, es decir, dentro de la legalidad, sobre la que tanto insistió aquella codificación. Diez-Picazo y Ponce de León, L., *El abuso del derecho y el fraude de la ley en el nuevo título preliminar del Código civil y el problema de sus recíprocas relaciones*, en Documentación Jurídica, Núm. 4, octubre–diciembre 1974, pág. 1329 *et seq.* Ver Hernández Gil, A., *Génesis y Aportaciones del Nuevo Título Preliminar del Código Civil*, pág. 7, cita precisa a la pág. 17; Barcelona, 1976. Y, en España, la figura ha sido incorporada al Título Preliminar del Código Civil español de 1974, Capítulo tercero, al declarar que la ley no ampara el abuso del derecho o su ejercicio antisocial.

▬ Modernamente, se ofrecen en la doctrina científica dos directrices para definir el abuso de derecho. "Una, de naturaleza subjetiva, que ve el abuso de derecho en el ejer-

cicio del mismo, bien fuere con la intención de dañar, o sin verdadero interés para el que lo ejercita. Otra, denominada objetiva, que percibe el abuso en el ejercicio anormal del derecho, contrariando los fines económicos o sociales para los que fue creado . . . ." Hernández Juan, D., *Legislación de Arrendamientos Urbanos*, Vol. 1, Art. 9°, pág. 2; Barcelona, 1957. Los actos del inquilino demandante en el presente caso quedan claramente enmarcados dentro de la directriz objetiva. Surge de dichos actos un conflicto irreconciliable entre los intereses del dueño de la propiedad y los del inquilino recurrido. De suerte que si el inquilino demandante deja de ser inquilino legítimo y se convierte en traficante de alquileres ha de observar la ley tal y como si fuera el dueño. Por ello el lucro ilegal proveniente de su posición privilegiada de inquilino—habiendo dejado de serlo—unido a su pretensión de que el dueño lo siga considerando como inquilino, por ser contrario al espíritu y propósito de la Ley de Alquileres Razonables, constituye el abuso del derecho que censura la doctrina. En consecuencia, permitir su acción punitiva de triple daño contra el dueño, chocaría con el principio jurídico que impide se tolere el ejercicio de los derechos de manera antisocial.

Más aún, en nuestra función de jueces hemos de rechazar las pretensiones de una parte que constituyan medio de eludir la aplicación de normas imperativas del ordenamiento. Advertimos que el demandante intenta evadir las disposiciones del Art. 4 de la Ley de Alquileres Razonables, según fuera enmendado por la citada Ley Núm. 67 de 19 de junio de 1964, disposiciones que le son adversas por cuanto tienen el efecto de excluir la aplicación de la Ley de Alquileres Razonables en casos como el de autos. Su proceder debe considerarse un acto de fraude de la ley, figura que es también muy antigua en el quehacer jurídico occidental.

El sentido que hoy le atribuimos al concepto de abuso del derecho es similar al que se le daba antiguamente a los actos *in fraudem legis*. Así, el derecho romano clásico cali-

ficaba como actos contrarios a la ley todos aquéllos que aun ajustándose a su letra, producían un resultado práctico contrario a su espíritu y finalidad. Castán Tobeñas, J., *Derecho Civil Español, Común y Foral*, 11ma. ed., Tomo 1, Vol. 1, pág. 574, Madrid, 1975. Dentro de esa similaridad de sentido se da hoy un contenido más concreto a la doctrina del fraude de ley. De Castro, por ejemplo, considera acto fraudulento aquél "cuyo resultado está prohibido por una ley, pero que se ampara en otra dictada con distinta finalidad", De Castro y Bravo, F., *Derecho Civil de España*, 2da. ed., pág. 544, Madrid, 1949. Puig Peña, por su parte, señala que los actos *in fraudem legis* están constituidos por "todas aquellas conductas aparentemente lícitas, por realizarse al amparo de una determinada ley vigente, pero que producen un resultado contrario o prohibido por otra norma tenida como fundamental en el disciplinamento de la materia de que se trata." Puig Peña, F., *Tratado de Derecho Civil Español*, Tomo I, Vol. 1ro., pág. 398, Madrid, 1957. Ver Art. 6, inciso 4 del Código Civil español.

A la luz de la doctrina expuesta no podemos aceptar que el inquilino demandante intente esquivar aquellas disposiciones de ley que le obligan referentes al canon máximo que puede cobrar, y que aún más, le colocaron fuera de su ámbito de protección cuando fijó un canon que excluye la propiedad de la regulación de la ley, y que a su vez reclame un derecho bajo la misma ley que dejó de cobijarle, por conllevar ese intento un fraude de la ley.

■ La Ley de Alquileres Razonables, conforme declara su exposición de motivos, está fundamentada en la protección de los inquilinos contra "numerosos propietarios que han estado y continúan imponiendo a sus arrendatarios contratos injustos, irrazonables y abusivos . . . y están recurriendo a diversas prácticas de especulación y de violento desalojo de negocios e industrias de importancia económica para el país." Art. 1, 17 L.P.R.A. sec. 181. Su manto protector cubre al

inquilino, pero no a quien al convertirse en mercader de alquileres abusa del derecho y queda excluido de su abrigo. Entender que la protección de la ley se extiende al que así actúa desvirtuaría la función social que persigue la legislación especial sobre inquilinato y las exigencias éticas del derecho.

■ Es incuestionable que la Ley desalienta el cobro de cánones en exceso de los autorizados para las propiedades cobijadas, mediante la reparación del daño causado a la víctima de dicha práctica ilegal, en la forma de una acción de triple daño. Mal puede, sin embargo, un inquilino que se ha convertido en traficante de alquileres, y que por tanto ha dejado de ser el inquilino que la Ley intentó proteger recibir ilegalmente de sus subarrendatarios cánones en exceso de los fijados por la agencia reguladora, y a su vez exigir de quien le arrendó la propiedad en cuestión, que le compense por daños que en la realidad no ha sufrido.

■ Permitir que el arrendatario dirija una acción de triple daño contra su arrendador a la vez que se lucra de la propiedad de manera ajena al interés que protege la Ley de Alquileres Razonables, sería permitir el ejercicio de un derecho en abierta hostilidad con el espíritu de la Ley que genera ese derecho. Fundamentales principios de nuestro ordenamiento se verían mancillados. Con el preclaro sentido que le distingue, hubo de sostener el Tribunal Supremo de España, en Sentencia de 12 de mayo de 1972, aun con anterioridad a la incorporación al Código Civil español de las figuras que aquí discutimos, que el abuso del derecho, la mala fe y el fraude a la ley, ya se consideren instituciones distintas, ya facetas de una misma institución, persiguen una finalidad idéntica, a saber: impedir que el texto de la ley sea utilizado para amparar actos contrarios a la realización de la justicia; que frente al contenido ético y al espíritu objetivo de la norma legal no prevalezcan las maniobras tendentes a lograr un resultado distinto al perseguido con ella. Ver *Comentarios a las*

*Reformas del Código Civil*, Vol. 1, pág. 334 *et seq.*, Madrid, 1977.

Es preciso evitar que el legítimo propósito de la ley—ofrecer protección a los inquilinos—se convierta, como advirtiera en un caso similar la Audiencia Territorial de Madrid, "en negocio a costa de la propiedad ajena". Sentencia de la A.T. de Madrid, 6 de diciembre de 1956. De acceder a las pretensiones del arrendatario subarrendador estaríamos extendiéndole la protección de la Ley que él le niega al subarrendatario a quien se la debe. El demandante dejó de ser "inquilino protegido" con respecto al "dueño arrendador", por lo que no puede prevalecer su acción en reclamo de la penalidad de triple daño.

*Se expedirá el auto de revisión solicitado, y se dictará sentencia revocando la dictada por el Tribunal Superior, Sala de San Juan, en 30 de junio de 1978.*

El Juez Asociado Señor Negrón García concurre con el resultado sin opinión.