ADMINISTRACIÓN DE COMPENSACIÓN POR ACCIDENTES DE AUTOMÓVILES, demandante y recurrida, *v.* ENRIQUE BIRD PIÑERO, demandado y recurrente.

*Número:* R-83-119    *Resuelto:* 30 de mayo de 1984

*Demetrio Fernández,* abogado de la parte recurrente; *Héctor Urgell Cuebas,* abogado de la parte recurrida.

### SENTENCIA

El recurrente, Sr. Enrique Bird Piñero se desempeñó como catedrático auxiliar en la Facultad de Derecho de la Universidad de Puerto Rico durante el período comprendido entre el 23 de octubre de 1973 y el 30 de junio de 1974. Para el 23 de octubre de 1973, fecha que coincidió con el inicio de un paro huelgario de los empleados unionados de la A.C.A.A., estaba vacante el cargo de Director del Departamento Legal de la mencionada agencia. El entonces director de la A.C.A.A. contrató los servicios del señor Bird para que ocupara la vacante interinamente hasta el 31 de diciembre de 1973, conviniéndose que éste trabajaría 7½ horas diarias, 37½ horas a la semana (a razón de cinco días semanales) por un sueldo de $1,500 por mes.

Finalizado dicho período se convino continuar los servicios del señor Bird hasta el 30 de junio de 1974 a base de las mismas condiciones. El señor Bird prestó sus servicios profesionales a la A.C.A.A. durante ambos períodos a satisfacción de dicha agencia recibió por ello la paga convenida. Al mismo tiempo continuó desempeñando su cátedra en la universidad.

Transcurridos tres años, la A.C.A.A. instó demanda judicial contra el señor Bird en que le reclamó el pago de $11,535. No especificó en su escueta demanda la razón de

dicha reclamación, limitándose a que se reclamaba "por concepto de recobro". Al cabo de seis años recayó sentencia que declaró con lugar la demanda y que es objeto del recurso que aquí nos ocupa. El trámite seguido por la demandante recurrida fue deficiente y laxo.(1) Lo detallamos al margen. Por dos ocasiones se dictó sentencia desestimatoria de la demanda por falta de trámite por parte de la demandante

---

(1) La demanda se presentó en el Tribunal Superior, Sala de San Juan, pero en su encabezamiento aparece radicada ante el Tribunal de Distrito, Sala de Río Piedras. Así consta además en la copia que se sirvió al demandado al ser emplazado, lo que explica que su contestación y una moción en solicitud de especificaciones, notificadas a la demandante, le fueran devueltas por la secretaria del Tribunal de Distrito en Río Piedras por no aparecer allí dicho caso. La demandante nada hizo con respecto a la moción del demandado y, transcurridos más de seis meses sin que se hiciera trámite alguno ante el Tribunal Superior, éste dictó sentencia el 23 de enero de 1978, desestimándola, en virtud de la Regla Núm. 11 de las Reglas de Administración. El demandado se enteró de que el caso estaba radicado en el Tribunal Superior al ser notificado con copia de moción presentada por la demandante para que se dejara sin efecto la sentencia. Erróneamente informó la demandante que el caso "fue radicado por error" en la Sala de Río Piedras e hizo alusión a su traslado al Superior en San Juan, cosa que nunca ocurrió, conforme hemos señalado. El Tribunal Superior dejó sin efecto su sentencia y reinstaló el pleito, por resolución de 15 de febrero de 1978.

No hubo más trámite significativo durante un año. El 28 de febrero de 1979 el tribunal ordenó a los abogados de las partes reunirse de conformidad con la Regla Núm. 37, —Reglas de Procedimiento Civil— y señaló el 14 de mayo de 1979 para conferencia con antelación al juicio. Las partes no comparecieron y el 21 de mayo de 1979 se dictó sentencia que por segunda vez desestimó la demanda. Ésta se reinstaló por resolución de 8 de junio de 1977, a moción de la demandante, señalándose el caso "para vista en su fondo" para el 29 de agosto siguiente. Ésta no se celebró y el 23 de enero de 1980 el tribunal concedió treinta días a las partes para someter estipulación de hechos y memorandos.

Transcurrieron más de seis meses y nada se hizo. El demandado solicitó desestimación de la demanda a tenor de lo dispuesto en la antes citada Regla 11. El tribunal señaló el 22 de agosto de 1980 para discusión de esta solicitud. Las partes no comparecieron. Se trasladó dicho señalamiento para el 10 de octubre de 1980. Las partes tampoco comparecieron. Se hizo un nuevo señalamiento para el 7 de noviembre de 1980 y se concedió 30 días para presentar estipulación de hechos. No se cumplió con ello y el 26 de enero de 1981 el tribunal, *motu proprio*, concedió veinte días adicionales para ello. No fue hasta el 16 de septiembre de 1981 —ocho meses después— que se presentó la estipulación, y en marzo y abril de 1982 presentaron las partes sus respectivos memorandos. La sentencia recayó finalmente el 8 de febrero de 1983.

No hay justificación para la dilación de seis años en disponer de un caso sencillo como éste, ni para una actitud tan permisiva para con las partes, como ha ocurrido en este caso, particularmente para con la parte demandante recurrida.

recurrida durante más de seis meses. Se ignoraron repetidamente órdenes y señalamientos que hacía el tribunal. La misma desidia se manifestó en el recurso ante nos. (²)

Si bien el recurrente no ha hecho un planteamiento frontal y directo sobre este aspecto, no ha dejado de traerlo a nuestra atención. Tras hacer referencia al "trámite azaroso" del caso, señala que es "una persona jubilada tras 30 años de servicio público honroso" y que el cobro que se le hizo luego de transcurrir tres años, y que se haría efectivo mediante la sentencia dictada casi diez años después, le llevaría a la ruina económica.

Podríamos, en atención a estos señalamientos, revocar la sentencia recurrida. Véase *Dávila* v. *Valdejully*, 84 D.P.R. 101, 103–104 (1961), donde reconocimos la "enorme fuerza persuasiva para guiar a todo tribunal a impartir justicia" que hay en el siguiente pronunciamiento de la Ley de 12 de marzo de 1903 (4 L.P.R.A. sec. 36), respecto a la función de este Tribunal Supremo:

> El Tribunal Supremo de Puerto Rico constituirá de aquí en adelante un tribunal de apelación y no un tribunal de casación. En sus deliberaciones y fallos en todos los asuntos, tanto en lo civil como en lo criminal, dicho Tribunal no se limitará solamente a infracciones de ley o quebrantamientos de forma, según fueren señalados, alegados o salvados por los litigantes, o según se hiciera constar en sus exposiciones y excepciones sino que con el más alto fin de justicia, el Tribunal puede también entender en todos los hechos y tramitaciones en la causa tal como aparecieren en autos, considerando en igual forma sus méritos para la mejor administración de justicia y del derecho, y evitar injusticias y demoras.

No tenemos, sin embargo, que recurrir a la drástica medida invocada en el citado caso de *Dávila* v. *Valdejully*.

---

(²) El recurrente presentó su alegato ante nos el 13 de septiembre de 1983. Vencido el término para replicar, la demandante recurrida no lo hizo. El 2 de noviembre le concedimos diez días para mostrar causa por la cual no debíamos tener por sometido el recurso. No lo hizo hasta el 21 de noviembre.

Un análisis de las cuestiones aquí planteadas nos convencen de que la sentencia recurrida no debe prevalecer.

Se amparó la demandante y se basó la sentencia recurrida en la siguiente disposición del Código Político:

Ningún funcionario o empleado que esté regularmente empleado en el servicio del Gobierno Estatal, o de cualquier municipio u organismo que dependa del Gobierno, cuyo salario, haber o estipendio sea fijado de acuerdo con la ley, recibirá paga adicional, o compensación extraordinaria de ninguna especie, del Gobierno Estatal, o de cualquier municipio, junta, comisión u organismo que dependa del Gobierno, en ninguna forma, por servicio personal u oficial de cualquier género, aunque sea prestado en adición a las funciones ordinarias de dicho funcionario o empleado, a menos que la referida paga adicional o compensación extraordinaria esté expresamente autorizada por la ley, y conste expresamente en la correspondiente asignación que ésta se destina a dicha paga adicional o compensación extraordinaria; . . . 3 L.P.R.A. sec. 551.

Es un hecho no controvertido que el recurrente desempeñó el trabajo para el que le contrató la A.C.A.A. y que al mismo tiempo atendía su cátedra y funciones a ella inherentes en la universidad. No hay controversia tampoco en cuanto a que rindió sus labores satisfactoriamente en ambas posiciones y se le pagó, sin reservas de clase alguna, por el trabajo realizado para ambos organismos. El recurrente señaló ante el Tribunal a quo, y ha reiterado ante nos, que sus horarios de trabajo no confligían, pues dictaba su cátedra en la *sección nocturna* de los cursos de Derecho y supervisaba una sección de clínica de Asistencia Legal que reunía *los sábados por la mañana*. Esto tampoco ha sido controvertido.

El Art. 2 de la Ley Núm. 100 de 27 de junio de 1956 (18 L.P.R.A. sec. 679), dispone:

Se autoriza a los departamentos, subdivisiones, agencias, juntas, comisiones, instrumentalidades o corporaciones públicas del Estado Libre Asociado de Puerto Rico a contratar o a utilizar los servicios de cualquier persona que ocupe cualquier

puesto en la Universidad de Puerto Rico, o en las dependencias de ésta, y pagarle la debida compensación por los servicios adicionales que preste a dicho organismo del Estado Libre Asociado de Puerto Rico, fuera de sus horas regulares de servicio en la Universidad y previo el consentimiento escrito del Rector de la Universidad, sin sujeción a lo dispuesto por la sec. 551 del Título 3.

Concluyó el tribunal de instancia que no medió dicho consentimiento para el período trabajado por el recurrente para la A.C.A.A. entre el 23 de octubre y el 31 de diciembre de 1973 y que, para el segundo período —3 de enero a 30 de junio de 1974— medió tal consentimiento pero limitado a doce horas semanales y una compensación total de $1,500 por todo el período. Esta conclusión está basada en la estipulación de las partes. Pero hay un evidente conflicto en cuanto a la interpretación de dicho estatuto. El demandado recurrente ha señalado repetidamente que competía al Director de la A.C.A.A. gestionar y obtener dicho consentimiento. De hecho, señala que estaba bajo la impresión de que el permiso había sido gestionado por la A.C.A.A. y concedido por el Rector. La demandante recurrente no contradice dicho argumento, limitándose a repetir que no hubo el consetimiento requerido.

La mencionada Ley Núm. 100 no dispone a quién corresponde gestionar el consentimiento del Rector. Nos parece que cuando se trata de disponer de fondos públicos, la obligación de ver de que no se dispensen en contra de la ley no puede dejarse al arbitrio del empleado. Es responsabilidad indelegable de la agencia contratante. Se trata, claramente, de un error de derecho. En tal caso no procede la devolución de lo indebidamente pagado. *Sucn. Choisne* v. *Municipio,* 100 D.P.R. 501, 503-504 (1972); *Pueblo* v. *Acevedo,* 65 D.P.R. 473, 479 (1945); *Quiñones* v. *Comisión Industrial,* 60 D.P.R. 447 (1942); *Silva* v. *Sucn. Caratini,* 51 D.P.R. 778 (1937).

La Constitución del Estado Libre Asociado consagra "el derecho de todo trabajador . . . a recibir igual paga por igual trabajo". Carta de Derechos, Art. II, Sec. 16. El demandado

recurrente realizó el trabajo que se le encomendó. Exigirle la devolución de lo que se le pagó por su trabajo requiere una demostración más fuerte de la alegada ilegalidad del pago que la demostrada por la demandante recurrida.

Por lo expuesto, se revoca la sentencia recurrida y se desestima la demanda, con imposición de costas a la parte demandante.

Así lo pronunció y manda el Tribunal y certifica la Secretaria General. El Juez Asociado Señor Rebollo López participó por Regla de Necesidad. Concurre en el resultado sin opinión. El Juez Asociado Señor Negrón García emitió opinión disidente. El Juez Presidente Señor Trías Monge no intervino.

(*Fdo.*) Lady Alfonso de Cumpiano
*Secretaria General*

—O—

Opinión disidente del Juez Asociado Señor Negrón García.

La sentencia de este Tribunal constituye una interpretación errónea de las leyes aplicables que relaja indebidamente los requisitos necesarios para validar la doble prestación de servicios por funcionarios y empleados gubernamentales. A la par, compromete peligrosamente el uso de fondos públicos.

La sentencia está esencialmente basada en dos premisas. En el hecho de que el recurrente Enrique Bird Piñero —abogado y a la sazón catedrático auxiliar de la Facultad de Derecho de la Universidad de Puerto Rico— fuera de horas laborales prestó servicios profesionales en calidad de Director del Departamento Legal de la Administración de Compensaciones por Accidentes de Automóviles (A.C.A.A.), entre el 23 de octubre y 31 de diciembre de 1973. Y segundo, en la conclusión de que una dispensa o permiso del Rector de dicha universidad autorizándolo, que no medió, correspondía obtenerlo a la A.C.A.A., como agencia contratante. En vir-

tud de esas premisas se deduce que se trata "claramente de un error de derecho" y que no procede "la devolución de lo indebidamente pagado".

I

Las disposiciones que gobiernan la solución del caso son el Art. 177 del Código Político y el Art. 2 de la Ley Núm. 100 de 27 de junio de 1956.

El Art. 177 reza:

Ningún funcionario o empleado que esté regularmente empleado en el servicio del Gobierno Estatal, o de cualquier municipio u organismo que dependa del Gobierno, cuyo salario, haber o estipendio sea fijado de acuerdo con la ley, recibirá paga adicional, o compensación extraordinaria de ninguna especie, del Gobierno Estatal, o de cualquier municipio, junta, comisión u organismo que dependa del Gobierno, en ninguna forma, por servicio personal u oficial de cualquier género, *aunque sea prestado en adición a las funciones ordinarias* de dicho funcionario o empleado, *a menos que la referida paga adicional o compensación extraordinaria esté expresamente autorizada por la ley*, y conste expresamente en la correspondiente asignación que ésta se destina a dicha paga adicional o compensación extraordinaria; . . . (Énfasis nuestro.) 3 L.P.R.A. sec. 551.

Su lectura pone de manifiesto el principio general que lo inspira: la consecución de una sana política de administración pública que prohíbe toda paga adicional o compensación extraordinaria a funcionario o empleado regular gubernamental, a menos que ello "esté *expresamente* autorizad[o] por ley". No basta que el servicio sea prestado, como tampoco que haya sido "en adición a las funciones ordinarias". El interdicto legal, como norma general, va dirigido al funcionario o empleado. Lógicamente es éste quien viene obligado a demostrar que está autorizado por ley.

Bajo esta óptica resulta menester leer e interpretar el alcance del Art. 2 de la Ley Núm. 100. Dispone:

Se autoriza a los departamentos, subdivisiones, agencias, juntas, comisiones, instrumentalidades o corporaciones públi-

cas del Estado Libre Asociado de Puerto Rico *a contratar o a utilizar los servicios* de cualquier persona que ocupe cualquier puesto en la Universidad de Puerto Rico, o en las dependencias de ésta, y pagarle la debida compensación por los servicios adicionales que preste a dicho organismo del Estado Libre Asociado de Puerto Rico, *fuera de sus horas regulares de servicio* en la Universidad y *previo el consentimiento escrito del Rector de la Universidad*, sin sujeción a lo dispuesto por la sec. 551 del Título 3. (Énfasis nuestro.) 18 L.P.R.A. sec. 679.

De fácil captación resulta que este artículo constituye una *excepción* al principio mayor y general consagrado en el Art. 177 del Código Político, según antes transcrito, al prohibir la paga adicional o compensación extraordinaria salvo autorización legal. Para que pueda invocarse con éxito, se exige concurran dos requisitos: (1) que el servicio se preste "fuera de sus horas regulares" *y* (2) que medie consentimiento "previo y escrito" del Rector de la Universidad. En buena metodología hermenéutica, el fiel cumplimiento de las condiciones impuestas por ser una exclusión a la prohibición, requiere su estricta observancia.

## II

En el caso de autos se prescindió de la autorización previa y escrita. Ello indiscutiblemente no sólo infringe la letra de la ley, sino la intención legislativa. La Ley Núm. 100 tuvo el propósito de "establecer una política *uniforme* en relación con la contratación de personal durante su tiempo libre, por otras agencias del Estado". 8 Diario de Sesiones 878 (1956). Aplicar la ley allí donde no se cumplió, vulnera esa política legislativa de igualdad pública en lo normativo y en lo jurídico.

## III

El trasfondo fáctico no configura un *error de derecho* a base de que la dispensa corresponde obtenerla a la agencia concernida.

Nótese que se trata de un trámite que no se siguió. Si algo aflora realmente es un error u omisión de hecho: no haber obtenido el permiso previo y escrito del rector.

Hemos visto cómo la prohibición del Art. 177 del Código Político que intenta atemperar el Art. 100 va dirigida al funcionario. A éste corresponde gestionar la dispensa. Ahora bien, arguyendo que el texto legal no estuviera lo suficientemente claro sobre quién recae esa obligación, aun bajo el enfoque más liberal posible, lo menos que puede admitirse es que el interés y la obligación tutelados en el estatuto recaen sobre ambos: el funcionario y la agencia. Lo contrario representaría formularnos las siguientes interrogantes: ¿Por qué imponer exclusivamente ese deber y responsabilidad, con carácter de absoluto, al Estado? ¿Significa ello que todo acto oficial, inclusive un contrato ilegal, compromete indefectiblemente los fondos públicos?

## IV

Finalmente, sin ninguna elaboración se alude a la Sec. 16 del Art. II de la Constitución en lo referente al derecho de todo trabajador a recibir igual paga por igual trabajo. Se consigna que el recurrente Bird Piñero realizó el trabajo y que "exigirle la devolución de lo que se le pagó por su trabajo requiere una demostración más fuerte de la alegada ilegalidad del pago . . .".

Tenemos reservas sobre la fuerza persuasiva del argumento. Primeramente, es menester despejar toda duda. El derecho constitucional de igual paga por igual tarea nada tiene que ver con la controversia planteada. Segundo, no se debate que prestó sus servicios, sino la legalidad de los pagos por la inobservancia sustancial del precepto legal aplicable.

La decisión de hoy es paradógica en varios extremos. Se asienta sobre un "error de derecho" que realmente es de *hecho* (omisión de un trámite de autorización). Como defensa se esgrime ese error "de derecho" para anular "la devolución de lo *indebidamente pagado*", lo cual presupone que en su

origen la A.C.A.A. no venía obligada a remunerar al recurrente Bird Piñero. Y todo, por quien irónicamente fue el Director del Departamento Legal de la A.C.A.A.

Deferencialmente discrepamos de esa interpretación irreal. "Interpretar es *inter pretare*, que deriva de *interpres*, vale decir mediador, corredor, intermediario. El intérprete es un intermediario entre el texto y la realidad; y la interpretación es extraer el sentido, desentrañar el contenido, que el texto tiene con relación a la realidad." E. J. Couture, *Estudios de Derecho Procesal Civil*, Ed. Depalma, 1978, Vol. III, pág. 55. Debió confirmarse el dictamen del Tribunal Superior que declara con lugar la demanda de la A.C.A.A.