# 2006 DTA 80

**TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE SAN JUAN
PANEL I**

LUZ CARRASQUILLO LÓPEZ
Recurrente

v.

ADMINISTRACIÓN DE LOS SISTEMAS DE RETIRO DE LOS EMPLEADOS DEL GOBIERNO Y LA JUDICATURA
Recurrida

Núm. KLRA-2005-00845

San Juan, Puerto Rico, a 5 de mayo de 2006

Panel integrado por su Presidenta, la Juez Rodríguez de Oronoz, el Juez López Feliciano y la Juez García García

López Feliciano, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

La recurrente Luz Carrasquillo López nos solicita que revoquemos una resolución de la Junta de Síndicos de la Administración de los Sistemas de Retiro, dictada el 25 de agosto de 2005 y notificada a las partes el 11 de octubre siguiente. Mediante dicha resolución, la Junta confirmó una determinación de la Administración con la que se dispuso cobrar a la recurrente la suma de $16,327.08, por concepto de pagos indebidos en su pensión. Consistiendo el pago indebido en que en lugar de habérsele satisfecho la suma mensual de $1,221.00, por un alegado error numérico se le pagó la suma de $1,300.95.

De la resolución de la Junta, la recurrente presentó en la instancia administrativa solicitud de reconsideración, la cual no fue considerada dentro del término establecido para ello. Oportunamente, la recurrente instó el presente recurso.

Con el beneficio de los escritos sometidos por ambas partes estamos en posición de disponer del recurso, lo que a continuación hacemos.

**Los Hechos e Incidentes Procesales Pertinentes**

La recurrente, nacida el 24 de enero de 1931, se desempeñó como Juez de Distrito desde el 13 de febrero de 1976 hasta el 27 de febrero de 1985, cuando presentó su renuncia para acogerse al retiro por años de servicio. A la fecha de acogerse al retiro tenía 54 años de edad y 23 años de servicio público.

Luego del trámite administrativo de rigor, el 15 de abril de 1985, la Administración de los Sistemas de Retiro, en adelante Retiro, calculó que la pensión que debía recibir era de $1,300.95 mensuales.

El 8 de abril de 2002, o sea, 17 años después de concederle la pensión, Retiro determinó que el cálculo original de la misma había sido erróneo, ya que la suma mensual que debió pagar era de $1,221.79. En este mismo día, Retiro le notificó a la recurrente que luego de revisar sus archivos se habían percatado de que hubo un error de cálculo al determinar el importe de la pensión, resultando en consecuencia que se le había pagado indebidamente la suma acumulada de $16,327.08.

Al aplicar al caso de la recurrente la fórmula para computar la pensión establecida en el Artículo 4 de la Ley Núm. 12 de 19 de octubre de 1954, según enmendada, en adelante Ley Núm. 12, 4 L.P.R.A. sec. 233, Retiro concluyó lo siguiente:

*"Conforme dicha disposición legal, los números correspondientes a la fórmula descrita se desglosan como se indica a continuación.*

*(a) el 25% del sueldo más alto devengado es equivalente a $7,003.69;*

*(b) el 25/72 del 1 por ciento de la retribución promedio por cada mes de servicio acreditable en exceso de los diez años fue calculado en $97.27;*

*(c) el número de meses en exceso de los diez años de servicio es equivalente a 158 meses.*

*(d) El setenta y cinco por ciento (75%) del sueldo más alto recibido como juez es equivalente a $21,011.07.*

*(e) En el caso ante nuestra consideración, la Apelante, según surge del expediente, tenía la edad de cincuenta y cuatro (54) años y dos (2) meses de edad y veintitrés (23) años y dos (2) meses de servicios acreditados al Sistema;*

*(f) La retribución promedio anual es de $28,014.77.*

*Al aplicar la formula matemática descrita en la ley al caso ante nuestra consideración, tenemos que al momento de retirarse la Apelante, se computó la pensión de la siguiente manera: Retribución promedio anual $28,014.77 por el 25% es $7,003.69. El ajuste es calculado en $15,368.66 ($97.27 por 158 meses). La suma de ambos es equivalente a $22,372.35 (7,003.69 más 15,368.66). El 75% de la retribución anual es de $21,011.07 (28,014.77 por 75%). En aquel momento se multiplicó el importe ajustado de $22,372.35 por el porcentaje actuarial calculado de 69.78% y se calculó en $15,611.42, Esta suma es equivalente a la pensión y al dividirse entre los doce meses del año, el resultado es $1,300.95.*

*No obstante, al evaluar el caso en la Junta de Síndicos, nos percatamos que hubo un error al momento de realizar el cálculo en cuestión. El error consistió al determinar la pensión anual. Conforme a la ley antes descrita, en ningún caso el importe de la pensión será mayor del 75% de la retribución promedio. Esta cantidad es equivalente a $21,011.07 (28,014.77 por 75%) en este caso. Al momento en que la Apelante solicitó*

*la pensión se calculó la misma utilizando el importe ajustado de la pensión ($22,372.35) y este número es mayor al 75% de la retribución promedio de $21,011.07. El cálculo debió ser $21,011.07 por el porcentaje actuarial calculado en 69.78% que da $14,661.52 de pensión anual ó $1,221.79 mensual."*

Ante dicha determinación, la recurrente solicitó de Retiro que se le desglosaran las sumas pagadas incorrectamente. El 12 de septiembre de 2002, Retiro le envió dicho desglose.

En desacuerdo con la determinación de Retiro, el 12 de septiembre de 2002 presentó apelación ante la Junta de Síndicos. Es del dictamen confirmatorio de dicha junta que la recurrente instó el recurso que ahora nos ocupa.

## II
## Las Cuestiones Planteadas

La recurrente nos presenta el siguiente único señalamiento de error:

*"Cometió error de derecho la Junta de Síndicos al resolver que constituye una actuación válida de la Administración de los Sistemas de Retiro, el cobro de lo pagado indebidamente a la parte aquí recurrente a pesar de que lo así pagado fue producto de un error de derecho cometido por la propia Administración y aún a pesar del tiempo transcurrido desde que ésta razonablemente debió haber advenido en conocimiento del mismo."*

Lo planteado puede contraerse a determinar si a la luz de los incidentes que provocaron esta controversia las actuaciones de Retiro -al calcular la pensión de la recurrente- consistieron de un *"error de hecho"* o de un *"error de derecho"*. Además, si la recurrente puede interponer las defensas de *incuria* y de abuso del derecho frente a las gestiones de cobro de Retiro, a los fines de quedar relevada de devolver el dinero que se le reclama.

## III
## El Derecho Aplicable

### -A-
### El Sistema de Retiro de la Judicatura de Puerto Rico

Mediante la Ley Núm. 12, *supra*, la Asamblea Legislativa creó un sistema de retiro para los Jueces que integran la Rama Judicial. El propósito del sistema es establecer un medio eficiente y económicamente solvente para proveer pensiones y otros beneficios a dichos funcionarios públicos. Artículo 1, 4 L.P.R.A. sec. 233. El sistema es administrado por la Administración de los Sistemas de Retiro del Estado Libre Asociado de Puerto Rico.

En lo pertinente al presente caso, en el Artículo 4 de la Ley Núm. 12, 4 L.P.R.A. sec. 233, se dispone lo siguiente:

*"Cualquier participante que por cualquier causa, excepto destitución que implique depravación moral, cese en sus funciones como juez, tendrá derecho a una pensión por retiro que comenzará en la fecha que él especifique en la solicitud escrita de retiro, sujeto a las siguientes disposiciones:*

*(a) En ningún caso, la pensión comenzará a pagarse en una fecha anterior a la fecha de su separación del servicio, ni podrá retrotraerse por más de treinta (30) días a partir de la fecha en que se radique la solicitud de pensión.*

*(b) Que el participante haya cumplido sesenta (60) años de edad o más y que tenga por lo menos diez (10) años de servicios acreditables.*

*(c) Que el participante no esté recibiendo ni tenga derecho a recibir ningún sueldo o remuneración del Gobierno por servicios prestados en cualquier capacidad a la fecha fijada para el recibo de una pensión por retiro.*

*(d) Todo participante cuya separación ocurriera antes de cumplir la edad de sesenta (60) años y que por lo menos tenga (10) años de servicios acreditables y no hubiera solicitado ni recibido reembolso de sus aportaciones acumuladas tendrá derecho a una pensión por retiro diferida. El mencionado participante recibirá una pensión por retiro diferida que comenzará al cumplir la edad de sesenta (60) años o a opción suya en cualquier fecha posterior si hubiera completado diez (10) o más años y menos de veinte (20) años de servicios.*

*Aquellos participantes que, sin haber cumplido la edad de sesenta (60) años, tuvieran veinte (20) o más años de servicio acreditables, solicitaren y les fuere concedida una pensión, ésta será computada según se indica más adelante, salvo que se reducirá a una suma que, para la edad del referido participante en la fecha de su retiro, represente el equivalente actuarial de una pensión pagadera al cumplir el participante los sesenta (60) años de edad, excepto en los casos de participantes que ocupan cargos de juez sin términos de duración fija en los cuales no se aplicará la reducción actuarial.*

*Salvo en los casos a que se refiere el próximo párrafo, la pensión por retiro de cualquier participante será igual al veinte y cinco por ciento (25%) del sueldo más alto devengado como juez, más 25/60 del uno por ciento (1%) del sueldo más algo devengado como juez por cada mes de servicio acreditable en exceso de diez (10) años de servicios. En tales casos, la pensión por retiro no excederá del setenta y cinco por ciento (75%) del sueldo más alto devengado como juez.*

...".

De otro lado, el Artículo 26 de la Ley Núm. 447 de 15 de mayo de 1951, según enmendada, también conocida como la Ley de Administración de los Sistemas de Retiro de los Empleados del Gobierno de Puerto Rico y sus Instrumentalidades, 3 L.P.R.A. sec. 787, en lo relevante al presente caso dispone lo siguiente:

"...

*Toda persona que a sabiendas hiciere alguna declaración falsa, o falsificare o permitiere falsificar cualquier registro o documento de este Sistema, con la intención de defraudar al mismo, será culpable de un delito menos grave, y será castigada de acuerdo con las leyes de Puerto Rico; y la Junta tendrá el derecho a recobrar cualesquiera pagos hechos mediante falsa representación.*

*La Junta tendrá derecho a recobrar cualesquiera pagos erróneos o indebidamente hechos, con posterioridad a la vigencia de esta ley; Disponiéndose, que la Junta determinará la forma y las condiciones bajo las cuales se recobrarán las cantidades así errónea o indebidamente pagadas, e informará al Secretario de Hacienda de la acción tomada para los fines correspondientes."* Subrayado nuestro.

-B-

### El Pago de lo Indebido o Pago sin Causa

Dentro de nuestro ordenamiento jurídico concerniente a las obligaciones que se contraen sin convenio, conocidas como cuasicontratos, nuestro Código Civil dispone lo siguiente en su Artículo 1795, 31 L.P.R.A. sec.

5121:

*"Cuando se recibe alguna cosa que no había derecho a cobrar, y que por error ha sido indebidamente entregada, surge la obligación de restituirla".*

Al interpretar esta disposición, nuestro Tribunal Supremo ha puntualizado que el pago sin causa debe entenderse como el pago recibido con causa errónea o equivocada, y que esa equivocación consiste en un error de hecho, no de derecho, en cuyo caso la parte que recibe el pago indebido viene obligada a devolver lo que recibió. *E.L.A. v. Asoc. de Empleados Obras Púb. Mun.*, 126 D.P.R. 320, 333 (1990); *Cartagena v. E.L.A.* 116 D.P.R. 254 (1955); *A.C.C.A. v. Bird Piñero*, 115 D.P.R. 463 (1984); *Sucn. Choisne v. Municipio* 100 D.P.R. 501, 504-505 (1972); *Pueblo v. Acevedo*, 65 D.P.R. 473 (1945).

Para que se configure la teoría del *"cobro indebido"* es necesario que concurran tres requisitos, a saber: (1) que se produzca un pago con la intención de extinguir una obligación; (2) que el pago realizado no tenga justa causa, o sea, que no exista obligación jurídica entre el que paga y que cobra, o existiendo, sea por una cuantía menor a la pagada; y (3) que el pago haya sido hecho por error y no por mera liberalidad o por cualquier otro concepto. *Sepúlveda v. Depto. de Salud*, 145 D.P.R. 560, 566-567 (1998).

Por tanto, es norma reconocida por nuestro Tribunal Supremo que sólo el error de hecho, y no el de derecho, da lugar al cobro de lo indebido.

El *"error de hecho"* se refiere a quien obra en base a unos hechos que no son verdaderos; como cuando se trata de una equivocación meramente formal o de trámite; es decir con un *"error humano"*; y el *"error de derecho"* corresponde a aquél en el que incurre quien actúa sin ajustarse a lo dispuesto en una norma jurídica vigente; como cuando se actúa basándose en una interpretación errónea de una ley o reglamento. *Sepúlveda v. Depto. de Salud, supra*, pág. 568; *Cartagena v. E.L.A., supra.*

-C-

## Los Errores Administrativos

Es norma jurisprudencial reiterada que los errores administrativos no crean derechos que obligan a las agencias gubernamentales ni impiden su corrección, por cuanto una persona no puede ampararse en una actuación incorrecta o ilegal para beneficiarse de la misma. Véanse *Matos v. Junta Examinadora*, 165 D.P.R. ___ (2005), **2005 J.T.S. 143**; *Magriz v. Empresas Nativas*, 143 D.P.R. 63 (1997); *Martínez Surís v. Colón Muñiz*, 131 D.P.R. 102 (1992); *Del Rey v. J.A.C.L.*, 107 D.P.R. 348, (1978).

-D-

## La Doctrina de Incuria

La inveterada defensa de incuria, fundamentada en la doctrina homónima, ha sido definida por nuestro Tribunal Supremo *"como el acto de dejadez o negligencia en el reclamo de un derecho, los cuales en conjunto con el transcurso del tiempo y otras circunstancias causan perjuicio a la parte adversa, por lo que opera como un impedimento en una corte de equidad."* *Colón Torres v. A.A.A.*, 143 D.P.R. 119, 124 (1997).

También sobre esta doctrina se ha sostenido que no basta el mero transcurso del tiempo para impedir el ejercicio de la causa de acción, sino que deben evaluarse otras circunstancias antes de decretar la desestimación de la misma. Entre dichas circunstancias se ha reconocido la justificación, si alguna, de la demora incurrida, el perjuicio que ésta acarrea y el efecto sobre intereses privados o públicos involucrados. *Colón Torres v. A.A.A., supra*, pág. 125; *Rivera v. Depto. de Servicios Sociales*, 132 D.P.R. 240 (1992).

## La Doctrina de Abuso del Derecho

La doctrina de abuso del derecho se basa en el fundamental principio jurídico que exige que todo derecho o facultad que la ley establezca, debe siempre exigirse de manera razonable, justa y legítima. *Soriano Tavárez v. Rivera Anaya*, 108 D.P.R. 663, 670 (1979).

Nuestro Tribunal Supremo al comentar sobre la figura del abuso del derecho ha señalado que es de antigua estirpe y que:

*"Surge en Roma, como arma utilizada para evitar los actos de emulación. Luego, superando esa estrecha concepción inicial, comenzó a dibujarse en la jurisprudencia francesa del siglo XIX para vedar algunos comportamientos o actividades que, sin embargo, se encontraban dentro de los límites fijados por la codificación napoleónica, es decir, dentro de la legalidad, sobre la que tanto insistió aquella codificación. Diez-Picazo y Ponce de León, L., El abuso del derecho y el fraude de la ley en el nuevo título preliminar del Código civil y el problema de sus recíprocas relaciones, en Documentación Jurídica, Núm. 4, octubre-diciembre 1974, pág. 1329 et seq. Ver Hernández Gil, A., Génesis y Aportaciones del Nuevo Título Preliminar del Código Civil, pág. 7, cita precisa a la pág. 17; Barcelona, 1976. Y, en España, la figura ha sido incorporada al Título Preliminar del Código Civil español de 1974, Capítulo tercero, al declarar que la ley no ampara el abuso del derecho o su ejercicio antisocial."* Soriano Tavárez v. Rivera Anaya, supra, **pág. 670.**

Además, el más Alto Foro ha enunciado que con relación a esta figura jurídica, la doctrina científica ofrece dos directrices para definirla. *"Una, de naturaleza subjetiva, que ve el abuso de derecho en el ejercicio del mismo, bien fuere con la intención de dañar, o sin verdadero interés para el que lo ejercita. Otra, denominada objetiva, que percibe el abuso en el ejercicio anormal del derecho, contrariando los fines económicos o sociales para lo que fue creado... (citas omitidas)".* Soriano Tavárez v. Rivera Anaya, supra, pág. 671.

Nuestro Tribunal Supremo ha atribuido al concepto de abuso del derecho el mismo sentido que se le daba antiguamente a los actos *in fraudem legis*, al puntualizar lo siguiente: *"Así, el derecho Romano clásico calificaba como actos contrarios a la ley todos aquellos que aún ajustándose a su letra, producían un resultado práctico contrario a su espíritu y finalidad."* Citando a Puig Peña, el más Alto Foro también apuntó que *"los actos fraudem legis están constituidos por 'todas aquellas conductas aparentemente lícitas, que realizadas al amparo de determinada ley vigente, producen un resultado contrario o prohibido por otra norma tenida como fundamental en el disciplinamiento de la materia que trata.'"* Soriano Tavárez v. Rivera Anaya, supra, pág. 672.

## IV
### El Análisis de la Cuestión Planteada

Debemos colocar bajo el palio de la normativa jurídica y de los principios doctrinarios anteriormente expuestos los hechos e incidentes administrativos que se exponen en el recurso que nos ocupa.

Nuestra evaluación de la controversia planteada debemos hacerla en atención al planteamiento medular de la recurrente, el cual puede sintetizarse a imputar como *"error de derecho"* la actuación de Retiro en mantenerse por 17 años adjudicando mensualmente de manera incorrecta la pensión que le correspondía.

En su solicitud de revisión administrativa, la recurrente señala las siguientes actuaciones impermisibles por parte de Retiro: una intervención fiscal tardía sobre una determinación que por 17 años se había considerado correcta; la incuria por parte de Retiro, producto de su dejadez y negligencia, en su reclamo de recobro a la recurrente; y el ejercicio abusivo del derecho por parte de Retiro, al no detectar oportunamente cualquier error

en la pensión determinada, pretendiendo luego actuar en contra de sus propios actos.

Entendemos que el Estado viene obligado a ser cuidadoso al tomar decisiones que puedan afectar derechos, no tan sólo los del propio Estado, sino que de manera más importante aquellos derechos que puedan afectar a la ciudadanía; como son los derechos de los empleados que le sirven. Las determinaciones gubernamentales que conllevan la adjudicación de derechos económicos reclamados, requieren en el proceso una mayor exigencia de corrección, sobre todo porque se trata de fondos públicos.

En nuestro ordenamiento jurídico encontramos cientos de leyes y reglamentos que imponen estas exigencias al Estado y a sus funcionarios.

Aplicando al presente caso la normativa que consignamos con anterioridad, somos de opinión que en materia de concesión de pensiones, bien sea por mérito, por incapacidad o por otros fundamentos establecidos en ley, el Estado viene obligado a evitar la comisión de errores. Esto es así, porque cuando el reclamante de una pensión ha cumplido con someter toda la información legítima y necesaria que justifica la concesión de la misma y el Estado a base de dicha información y de la que tiene en sus propios récords la concede, se crea una expectativa de certeza y continuidad en el pensionado. A base de esa expectativa es de esperarse que el pensionado planifique su vida económica futura.

Por estas consideraciones, es que el Estado no debe esperar 17 años para revisar una determinación previa de la cuantía de una pensión por años de servicio, para que luego de detectado un *"error de cálculo"* pretenda recobrar del pensionado lo que el Estado mismo por tantos años entendió que pagaba correctamente y así se lo hizo creer al pensionado.

Sabido es que cuando la actuación del Estado consiste en un error de hecho, como lo es cuando se trata de una equivocación meramente formal, de trámite o un error de cálculo, surge el derecho del Estado de recobrar lo indebidamente pagado. Véase *E.L.A. v. Asoc. de Empleados Obras Púb. Mun., supra; Cartagena v. E.L.A., supra; A.C.C.A. v. Bird Piñero, supra; Sucn. Choisne v. Municipio, supra; Pueblo v. Acevedo, supra.*

También es norma reconocida que, de ordinario, los errores administrativos no crean derechos que obliguen a las agencias gubernamentales ni impidan su corrección. *Matos Matos v. Examinadora de Ingenieros y Agrimensores, supra; Magriz v. Empresas Nativas, supra; Martínez Surís v. Colón Muñiz, supra; Del Rey v. J. A.C.L., supra.*

Ahora bien, aun las normas que de ordinario no parecen tener excepciones, en su ciega aplicación pueden llevar a que se derroten los verdaderos fines de la justicia. Nos parece que esa es la situación del presente caso, donde el Estado no ha demostrado diligencia en fiscalizar y revisar sus propios actos, actuación que tiene el efecto de convertirse en un abuso del derecho al intentar reivindicar sus propios errores en tiempo remoto a la ocurrencia de los mismos. Véanse *Colón Torres v. A.A.A., supra; Soriano Tavárez v. Rivera Anaya, supra.*

Somos de opinión que la reclamación de Retiro a la recurrente, ratificada por la Junta de Síndicos en la resolución recurrida, no ha sido exigida de manera razonable, justa y en el ejercicio normal del derecho. Estamos ante una situación donde aún tratándose de un acto contemplado por la Ley -el recobro de lo incorrectamente pagado- de consumarse el mismo se produciría un resultado contrario a los fines económicos y sociales para los que se creó el sistema de pensiones de los empleados gubernamentales. Véase *Soriano Tavarez v. Rivera Anaya, supra,* págs. 671-672.

El propósito de la legislación sobre el retiro de los empleados gubernamentales es establecer un medio eficiente y económicamente solvente para proveer pensiones y otros beneficios ante la llegada de la vejez u otras situaciones contempladas en la ley. Véase *Artículo 1 de la Ley Núm. 12, supra.* La pensión por mérito y

años de servicio persigue que aquel que ha dedicado gran parte de su vida al servicio público tenga con que razonablemente vivir hasta el fin de sus días. En casos como el presente, se trata de una relativa modesta anualidad pagada en mensualidades.

Aunque así no lo dictaminamos en el presente caso, *quare* si la falta de diligencia del Estado en fiscalizar adecuadamente sus propias determinaciones internas constituye de por sí un error de derecho, que en consecuencia -en un caso de esta naturaleza-, pueda liberar totalmente al pensionado afectado de restituir lo incorrectamente recibido.

No obstante lo expuesto, como ha sido ya resuelto con anterioridad por este Tribunal de Apelaciones, si entendemos que en el caso que nos ocupa las actuaciones de Retiro constituyen un error de hecho, por lo que la recurrente no quedaría eximida de restituir la totalidad de los pagos que indebida o incorrectamente le hicieron, es evidente que la falta de diligencia demostrada por Retiro ha provocado y continuará provocando más inconvenientes a la recurrente que los beneficios que le pueda brindar la pensión otorgada, derrotándose así el propósito de estos beneficios. Véase *Carmen Landrau Febus, recurrente v. Administración de los Sistemas de Retiro de los Empleados de Gobierno y la Judicatura, recurrida.* KLRA-2004-00688, Panel I de San Juan, Sentencia de 18 de noviembre de 2004.

Así concluido, somos de opinión que en justicia el recobro iniciado por Retiro debe ser a partir del momento en que dicha agencia tardíamente descubrió el error alegadamente de cálculo, y lo notificó a la recurrente, o sea, a partir del 8 de abril de 2002.

## V
### Disposición del Recurso

Por los fundamentos antes expuestos, se modifica la resolución recurrida a los fines de que la recurrente restituya los pagos indebida o incorrectamente recibidos, únicamente desde el 8 de abril de 2002 en adelante; debiendo además concedérsele, de así ser solicitado, un plan de pagos razonable sobre la cantidad adeudada. Así modificada, se confirma lo restante de la resolución recurrida.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones