# 2007 DTA 121

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**
**PANEL III**

ALEJANDRO GARCÍA PADILLA, EN CARÁCTER DE SECRETARIO
DEL DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR,
TEOFILA R. SANTIAGO Y/O RUBEN GONZÁLEZ
Demandantes-Apelantes

v.

IVETTE PUCHOLS, PRESIDENTA JUNTA DE DIRECTORES
DEL CONDOMINIO NEW SAN JUAN
Demandadas-Apeladas

Núm. KLAN-2007-01154

San Juan, Puerto Rico, a 18 de octubre de 2007

Panel integrado por su Presidenta, la Juez Bajandas Vélez,
y los Jueces Aponte Hernández y Morales Rodríguez

Morales Rodríguez, Juez Ponente

**TEXTO COMPLETO DE LA SENTENCIA**

Doña Teofila Ramona Santiago Quiles y su esposo Rubén González presentaron una queja ante el Departamento de Asuntos del Consumidor. Alegaron que la Junta de Directores del Condominio New San Juan no había reparado ciertas filtraciones provenientes de la azotea en su apartamento PH-5. Alegaron que las filtraciones afectaban seriamente tanto a la estructura como a su salud. La Junta de Directores del Condominio solicitó al DACO la desestimación sumaria de la querella. Alegó que doña Teófila y don Rubén no habían acudido ante ésta, antes de acudir al foro jurisdiccional. Alegó:

*"La querella no contiene ninguna alegación que indique que los querellantes agotaron ese procedimiento. Tampoco existe evidencia documental en la Oficina de Administración del Condominio referente a que los querellantes hubiesen presentado por escrito ningún reclamo a la Junta, o a la Administradora del Condominio, en torno a las supuestas filtraciones en su apartamento, ni que hubiesen solicitado a éstos que acudieran a su residencia a verificar tales alegaciones.*

*El 7 de julio de 2005 se eligió también en asamblea, el Comité de Conciliación del Condominio, en la forma dispuesta por la Ley. La parte querellante sabe bien de ese hecho, por cuanto la señora Santiago presidió esa asamblea como anterior presidenta de la Junta.*

*Los querellantes no le han presentado esos reclamos que ahora hacen en el DACO a ninguno de los miembros del Comité de Conciliación como tampoco lo han hecho ante la nueva Junta electa. (...) Resulta que en el presente caso la nueva Junta lleva sólo ocho meses administrando el Condominio y ningún titular le ha presentado reclamo alguno por filtraciones provenientes de áreas comunes. Ahora bien, la querellante, señora Santiago, estuvo al frente de la Junta durante más de 13 años consecutivos, hasta el 7 de julio de 2005, durante cuyo período, un problema como el alegado ahora, de filtración múltiple desde la azotea, que le estuviera causando deterioro y desprendimiento de la pintura interior de su unidad, con hongos y manchas en las paredes y pérdida de bienes por esa causa, así como problemas de salud, debió evidenciarse. Y de haberse evidenciado a partir de esa última fecha, los querellantes debieron poner a la nueva Junta, o al Comité, en conocimiento del mismo de forma inmediata, diligente y adecuada para que actuaran con premura. Ir al DACO saltando el proceso dispuesto por la Ley sin justificación alguna amerita de entrada la desestimación de la querella y la devolución del asunto a la Junta y/o al Comité de Conciliación para que lo investiguen y/o atiendan a la mayor brevedad posible, de comprobarse su certeza."*

DACO no resolvió ese planteamiento sino hasta después de haber celebrado vista. El 1 de diciembre de 2006, la agencia emitió la siguiente Resolución:

*"Conforme a la prueba desfilada, los defectos que presenta el apartamento de la parte querellante están en un elemento común, como lo es el techo del apartamento que a su vez es el techo del condominio, por lo que es responsabilidad corregirlos por parte de la Junta de Directores como cuerpo directivo del Consejo de Titulares. A pesar de que ciertamente la parte querellante no llevó en ningún momento su reclamo ante la Junta de Directores previo a la presentación de la querella, conforme exige el Artículo 42 de la Ley de Condominio, lo cierto es que a base del tiempo transcurrido y de nuestra facultad de eximir de este requisito,*

485

*este asunto debe dilucidarse lo antes posible.*

*En virtud de lo anterior, procede por tanto que la Junta de Directores repare satisfactoriamente el problema de humedad y filtraciones existente en el techo del apartamento de la parte querellante, conforme indicado en el informe de inspección emitido por este departamento.* **Con ese propósito, la parte querellada debe convocar al Consejo de Titulares de Condominio a la mayor brevedad para que luego de evaluar varias cotizaciones de reparación, se escoja una de ellas para llevar a cabo las reparaciones. Igualmente, el Consejo de Titulares deberá decidir el origen de los fondos para realizar estas obras, de manera consistente con las disposiciones legales antes citadas.** *"* (Énfasis nuestro)

El 19 de enero de 2007, Doña Teófila Ramona Santiago pidió a DACO que acudiera al Tribunal de Primera Instancia para poner en vigor su resolución. La Junta le sometió a la agencia una moción, el 31 de enero de 2007. Le informó que había convocado una asamblea extraordinaria del Consejo de Titulares con el fin de presentar las cotizaciones. La Junta de Directores optó por cumplir la resolución de DACO en lugar de pedir la revisión judicial de la resolución emitida. DACO no atendió esa moción y en su lugar, el 28 de febrero de 2007, presentó una *"demanda y petición"* ante el Tribunal de Primera Instancia para hacer cumplir orden. La asamblea del Consejo de Titulares se celebró el 4 de marzo de 2007. A esa fecha, la Junta no había sido notificada de la citada *"demanda y petición"*. Sólo sabía que los querellantes habían urgido a DACO para acudir al Tribunal. A la asamblea asistieron doña Teófila Ramona y don Rubén. No informaron sobre la demanda.

La asamblea acordó que, aunque el problema de filtraciones provenientes de la azotea había que atenderlo con prioridad, existe otra prioridad de mayor urgencia: la reparación de los ascensores del Condominio. El problema identificado durante la discusión fue que los ascensores de uso general estaban paralizados en ese momento y el de carga estaba en condición precaria. El acta del 4 de marzo de 2007 explica en detalles lo que el Consejo de Titulares deliberó:

*"La situación de las filtraciones provenientes de la azotea del Condominio es anterior al 7 de mayo de 1999 cuando la anterior Junta contrató los servicios de la empresa Bayamón Roofing Corporation. El contrato incluia la limpieza, lavado a presión, remoción de todo el material de la superficie de la azotea del condominio incluyendo el área comercial e impermeabilizar la misma para minimizar el empozamiento mediante la aplicación de un "primer" y fibra de aluminio en toda la superficie. El costo del trabajo fue de $50,000.00 que le fue pagado en dos plazos en 1999. El contratista entregó una certificación de garantía por diez años, pero condicionado a que cada año se le diera mantenimiento, pagando el mismo a la empresa para poder tener derecho a la garantía. A los once meses de hecho, el trabajo las filtraciones volvieron en particular en el PH-3 y PH-5 respectivamente. La Junta se comunicó con el contratista para que cumpliera la garantía y este se negó por cuanto no se había firmado el contrato de mantenimiento a base de los $6,000.00 anuales durante los diez años de garantía. En esa disputa pasó un tiempo y las filtraciones aumentaron porque el material aplicado a la azotea comenzó a desprenderse. Se presentó la querella en DACO el 6 de septiembre de 2000 por la Sra. Santiago [la aquí recurrida], solicitando la anulación del contrato y devolución de lo pagado. (...) El DACO resolvió el 9 de abril de 2001 que la labor de impermeabilización realizada por el contratista fue insatisfecha y tenía que hacerse de nuevo. Resolvió además que el contratista no cumplió con la garantía otorgada, anuló el contrato y ordenó al contratista devolver todo el dinero pagado por el condominio $50,000.00 y de no cumplir con treinta días esa resolución pagaría además intereses legales a partir del cumplimiento. (...)*

*Se hicieron varias gestiones para lograr el recobro de dinero, dentro de las cuales DACO le impuso una multa administrativa de $10,000.00 por incumplimiento de sus órdenes y el tribunal impuso el pago de todas esas cantidades más $360.00 en honorarios a favor del DACO. Finalmente se presentó una moción el 4 de enero de 2004 para la ejecución de la sentencia del tribunal como paso previo al embargo de bienes, pero el 13 de enero de 2004, el tribunal denegó la moción porque el 16 de diciembre de 2003, el contratista notificó que*

*se declaró en Quiebra paralizando así la ejecución de la sentencia mediante el embargo de bienes. A esa fecha de la Quiebra, el crédito del condominio con los intereses ascendía a $57,360.18, el caso quedó detenido por esa Quiebra y el Tribunal Federal de Quiebra relevó finalmente a ese contratista del pago a sus acreedores el 23 de enero de 2004. Por lo que el crédito del Condominio se perdió, aparentemente eso no se ha reflejado en los libros del Condominio ni se le notificó a los titulares. Descansando en la posibilidad de recobrar ese dinero, la anterior Junta no corrigió el problema de filtraciones de la azotea y tan pronto la nueva Junta entró en posesión la anterior presidenta de la Junta indolente presentó queja en el DACO alegando que tenía filtraciones provenientes de la azotea hacía un año, causándole daños y que la nueva Junta no hacía nada por corregir el problema. (...) DACO entendió que el problema hay que resolverlo, sea quien sea el responsable del mismo y resolvió el 1 de diciembre de 2006 que la Junta convocara al Consejo para una asamblea en la cual se decidiera luego de evaluada la cotización para la obra."* (Énfasis nuestro)

¿Qué contratista llevará a cabo la reparación de la azotea del condominio? Lo que redundaría en la solución del problema de filtraciones por el apartamento de la querellante la Sra. Ramona Santiago, entre otros, a efectuarse en sesenta días luego del acuerdo del Consejo. **Ya la querellante volvió al DACO a quejarse de que no se había cumplido con la orden del DACO y se le replicó a esa queja, pero el problema está ahí y es el Consejo a quien compete darle solución. La Junta cumple con someter el asunto a consideración del Consejo, pues no puede disponer de dinero alguno no presupuestado para efectuar una obra calificada de extraordinaria, urgente y necesaria por el propio DACO. Menos aún puede la Junta retirar fondos de la reserva para costear en todo o en parte esa obra sin la autorización del Consejo, según reconocido por el DACO a base del Artículo 38 de la Ley de Condominios. Corresponde al Consejo, que no es parte del caso ante el DACO, decidir cual cotización escoge para efectuar la obra, cuál método de financiamiento se va a utilizar y cuando se puede efectuar la obra. Una vez decidido eso es que la Junta estaría en condiciones de iniciar la obra de reparación de la azotea del condominio por lo menos del área residencial prioritariamente. La Junta buscó y les va a presentar al Consejo varias cotizaciones, se investigó en el DACO si alguno de los contratistas tienen pendientes o ha sido objeto de querellas, cosa que no se hizo por la Junta anterior, aparentemente.**

El Moderador concede turnos para preguntas sobre el informe de la Presidenta. (...)

Sra. Milagros García, apto. 1004: *"Yo le quiero preguntar al licenciado, yo no soy muy brillante, pero me parece a mi que si DACO le pide a la Junta que presente cotizaciones para mí se está dando por hecho de que DACO está diciendo que el techo hay que arreglarlo; por lo tanto, hay que impermeabilizarlo. Yo asumo entonces que el techo hay que arreglarlo."*

El Lcdo. Cirino le contesta que sí, porque cuando fueron a DACO se admitió que el problema estaba y que está desde el 1999. Independientemente de quiénes sean los responsables tiene la Junta y el Consejo que resolverlo, pero el Consejo no está obligado en esta Asamblea a resolverlo ahora. El Consejo no fue parte en la querella, fue la Junta y ésta no tiene potestad para resolver el problema hasta que el Consejo apruebe el cotizador. Por la buena fe de la Junta se presentaron las cotizaciones aquí y en DACO de que quiere resolver el problema independientemente del afectado. El Sr. González intenta interrumpirle desde su asiento. El licenciado aclara que el Consejo no está obligado ni bajo la tutela de DACO en esta resolución, el Consejo es soberano bajo el Artículo 38. El Consejo le responderá a DACO en su momento porqué no lo aprobó para ahora y porqué lo pospuso si es que esa fue su decisión para un momento en que se haya resuelto otra prioridad porque deben contar con que hay dos asuntos, el sellado del techo el cual no está presupuestado y la reserva no cumple con el costo total; por lo tanto, hay que aprobar una derrama. Y en segundo lugar, si hay otro problema prioritario en el momento el Consejo debe escoger cual de los dos es más prioritario sin desechar el problema del techo.

El Moderador concede otro turno adicional a favor o en contra de la moción para que no se apruebe el

trabajo impermeabilización.

Sr. Mickey Miranda, apto. 311: expresa que la única razón por la cual desea que no se apruebe el proyecto del sellado del techo al momento es que hay una prioridad, la cual es los elevadores porque les afecta a todos. Ambas cosas se deben hacer, pero la impermeabilización no es lo más importante al momento.

Un titular no identificado aclara que los presentes no entienden que de no aprobarse para hacerse ahora la impermeabilización no significa que nunca se hará, es sólo que se hará en otro momento, ya que hay una prioridad mayor que son los ascensores.

Sr. José Nieves, apto. 913: propone que se vote para que al día de hoy no se apruebe la impermeabilización del techo.

El Moderador procede a la votación para que no se apruebe en este momento la impermeabilización del techo. La moción se aprueba con sólo cuatro votos en contra.
(...)

El Moderador presenta la moción en el sentido de que la Junta de Directores convoque a la mayor brevedad posible a una Asamblea Extraordinaria para trabajar con los arreglos de los ascensores. La moción se aprueba por unanimidad.

La Asamblea decidió posponer el sellado de la azotea hasta que se repararan los ascensores. De esa decisión ningún titular acudió al DACO, como es su derecho bajo el Artículo 42 de la Ley de Condominios, 31 L.P.R.A. sec. 1293-f. El 11 de abril de 2007 se diligenció la notificación de la *"demanda y petición"* junto a una orden judicial para comparecer a una vista para mostrar causa, pautada para el 18 de abril de 2007. La Junta presentó el 19 de marzo de 2007 una moción de desestimación fundamentada, sin someterse a la jurisdicción del Tribunal. Planteó que no había sido emplazada ni notificada de la demanda; que sólo se le había enviado copia por telefax. Planteó, además, que la Junta había convocado al Consejo de Titulares y que éste había tomado las decisiones que ya se han reseñado.

El día 18 de abril de 2007 se efectuó la vista del caso. El juez de instancia escuchó argumentos extensos sobre lo deliberado y actuado por el Consejo de Titulares, sobre las cotizaciones para impermeabilizar el techo y sobre el problema de los ascensores. También escuchó las recriminaciones entre el abogado de la Junta y la querellante doña Teófila Ramona Santiago. El primero alegaba que ella era la culpable del problema de las filtraciones por no haber reparado el asunto con diligencia cuando presidió la Junta por trece años y doña Teófila le imputaba al abogado que él había representado a la Junta en ese tiempo. El juez dictó *"sentencia"*:

Atendidos los planteamientos de las partes, le ordenamos a la Junta de Directores del Condominio New San Juan solicitar a los contratistas de impermeabilización de techos que sometan cotizaciones dentro del término de 60 días a partir de hoy.

La Junta pidió reconsideración y el juez acogió su moción. Ordenó a DACO que la replicara. En su respuesta DACO expreso:

*"Ante la situación de los ascensores, la determinación en cuanto a dicha situación tomada por el Consejo de Titulares y, según expuesto, el estado económico del Condominio, **nos allanamos a la desestimación sin perjuicio.**"*

Con lo que no podemos estar de acuerdo es con la solicitud de la demandada de que se imponga las costas del proceso, ya que la demandada esperó a que el caso estuviera bajo la jurisdicción del tribunal para informar

de un cumplimiento provisional de la resolución y orden.

No obstante el obvio desistimiento de DACO de su *"demanda y petición"*, motivado por el entendimiento de la situación que atraviesa el Condominio, el Tribunal de Primera Instancia declaró sin lugar la moción de reconsideración. La Junta acude ante nosotros y señala que erró el Tribunal de Primera Instancia *"al emitir una sentencia sin base en evidencia sustancial en el expediente,"* y *"en abuso de su discreción, en contra incluso del allanamiento expreso de la parte demandante a la desestimación de la demanda y a que se dejara sin efecto la sentencia."*

Este caso plantea otros asuntos. El primero es el del principio de la sana convivencia y la buena fe, al momento de ejercer derechos contemplados en la ley. El segundo es el del agotamiento del proceso en el Condominio, también dispuesto por ley. El tercero es la validez y la consecuencia de lo actuado por el Condominio en cumplimiento con la orden de DACO. El último es el remedio que procede de conformidad con el desistimiento por parte de la agencia.

# I

Existe un pensamiento generalizado que asume como una realidad existencial que haya que escoger entre libertad y solidaridad. Esa mentalidad asume que sean irreconciliables los derechos de la persona y los de la comunidad. Por naturaleza, somos seres-en-relación; estamos obligados, querámoslo o no, a convivir. Somos personas, del latín *per sonare*. Suena a través de nosotros un espíritu que busca el encuentro con otros para hacer familia, comunidad, vecindario, pueblo. Nuestra propia naturaleza necesita tanto de la libertad y el derecho personal como de la solidaridad con los próximos y el respeto de sus derechos. Nuestro ordenamiento jurídico, partiendo de esa experiencia vital, busca integrar los derechos personales y los comunitarios dentro del marco de la sana convivencia.

La necesidad de superar ese pensamiento erróneo generalizado en los espacios y tiempos compartidos, se muestra patente en los complejos de vivienda sujetos a Ley de Condominios, Núm. 103 de 5 de abril de 2003, 31 L.P.R.A, sec. 1291 *et seq.* No es lo mismo vivir en una casa con sus verjas y rejas que en un departamento de un edificio donde no hay modo de evadir el encuentro o el desencuentro entre vecinos. La ley, en su segundo artículo —compilado como nota bajo 31 L.P.R.A., sec. 1291—, enfrenta el reto señalado:

*"El Consejo de Titulares, la Junta de Directores y el Agente Administrador del condominio, tienen como **deber primordial** orientar sus acciones salvaguardando el principio de que el propósito del régimen de propiedad horizontal es propiciar el disfrute de la propiedad privada sobre el apartamiento y que la administración de las áreas y haberes comunes del edificio se realiza para lograr el pleno disfrute de este derecho. **Correlativamente** cada titular reconoce que el ejercicio del dominio en el régimen de propiedad horizontal está limitado por los derechos de los demás condóminos y que **el derecho de propiedad sobre su apartamiento tiene que ejercerse dentro del marco de la sana convivencia y el respeto al derecho ajeno."*

En el ejercicio y el reclamo de sus derechos, **los titulares actuarán conforme a los principios de la buena fe, de la prohibición de ir en contra de sus propios actos y la del abuso del derecho.**

Esa última evocación de principios —el de la buena fe y el abuso del derecho—, gira contra un sólido cuerpo de doctrina. En *Soriano Tavárez v. Rivera Anaya*, 108 D.P.R. 663, 670 (1979), nuestro Tribunal Supremo acogió la doctrina del derecho civil europeo sobre el abuso del derecho. Esa doctrina *"demanda que todo derecho o facultad que la ley consagre, se ejercite siempre razonable, justa y legítimamente"*. En *Velilla v. Pueblo Supermarkets, Inc.,* 111 D.P.R. 585, 587-588 (1981), citando a *Soriano Tavárez*, nuestro Tribunal Supremo trabó la citada doctrina con el principio de la buena fe:

*"Dictaminamos que el requisito de la buena fe es también exigencia general de nuestro derecho y que como tal se extiende a la totalidad de nuestro ordenamiento jurídico. El contenido de eticidad de cada acto deberá examinarse a la luz de sus circunstancias particulares, pero el comportamiento conforme a la buena fe es precepto general que abarca toda actividad jurídica. (...) Es ilegítimo el ejercicio de un derecho cuando el titular excede manifiestamente los límites impuestos por la buena fe o por el fin social o económico de ese derecho."*

No hace falta enmendar el Código civil, como se hizo en España —José Luis de los Mozos, *Derecho civil: métodos, sistemas y categorías jurídicas,* Editorial Civitas S.A., 1988, pág. 216— para establecer ese principio. Dentro de nuestra organización judicial jerárquica, el Tribunal Supremo sienta pautas normativas obligatorias. Estamos, pues, obligados a enfocar el *"contenido de eticidad de cada acto"*; es decir, evaluar *"el comportamiento conforme a la buena fe"* en los casos ante nuestra consideración; hacerlo *"a la luz de sus circunstancias particulares"*. Pero, como hemos visto, la Ley de Condominios incorporó el principio de la buena fe y la doctrina sobre abuso del derecho entre sus disposiciones. Eso subraya que *"todo derecho o facultad que la [la Ley de Condominios] consagre, se ejercite siempre razonable, justa y legítimamente"*.

En el citado Art. 2 de la ley, como hemos visto, el principio de la buena fe está atado al mandato de que *"el derecho de propiedad sobre su apartamiento tiene que ejercerse dentro del marco de la sana convivencia y el respeto al derecho ajeno"*. El profesor Michel J. Godreau, lo explica en su comentario titulado *La Nueva Ley de Condominios,* San Juan, Editorial Dictum, 2003, a la pág. 27:

*"Uno de los principales problemas en los condominios gira en torno a la sana convivencia, sin la cual no se puede tener estabilidad ni contribuir al mejoramiento de la propiedad. La experiencia ha demostrado que una de las formas de proceder que más altera esa convivencia y la buena administración de un condominio consiste en el comportamiento de algunos titulares que, en desdén de los más sanos principios de la buena vecindad, actúan caprichosamente o por venganza en contra de una Junta de Directores responsable o incluso contra decisiones debidamente adoptadas por una asamblea de titulares. En la nueva Ley de Condominios se establecen varias soluciones dirigidas a atajar este tipo de comportamiento. (...) En el Artículo 1-A, se reitera la necesidad de promover la sana convivencia y de que el ejercicio de los derechos en el condominio se oriente por los siguientes principios: 1) el de la buena fe, 2) el de la prohibición de actuar en contra de los propios actos, y 3) el que prohíbe el ejercicio abusivo de los derechos. (...) [S]abemos que no son pocos los casos en los que algún titular, molesto porque lo destituyeron de la Junta o porque le cortaron la luz y el agua o porque tuvo un altercado con el Presidente, le radica querellas a todo el condominio, buscando venganza o por cualquiera otra motivación mezquina, destruyendo así la convivencia en el edificio. Ese es un caso claro del ejercicio abusivo del derecho, que expresamente queda prohibido. Pero para que las anteriores prohibiciones no queden sin dientes, la Ley dispone en su Artículo 42(e) que quien presente querellas frívolas —sea un titular o sea la Junta—, tendrá que pagar todos los gastos del procedimiento más los honorarios de abogados en que hubiera incurrido la parte que prevaleció."*

Estamos en presencia de esa hipótesis planteada por la Ley. Doña Teófila fue la presidenta de la Junta del Condominio durante el tiempo en que comenzó y se desarrolló el problema sobre el cual ella se querelló ante DACO. Pero ella dejó pasar años sin dar con una solución al problema de filtraciones que afectaba a su propio apartamento. Pocos meses después de ser sustituida en la presidencia, presentó la querella reclamando a su sucesora Ivette Puchols y a la nueva Junta de Directores la solución urgente e impostergable. Lo hizo con una impaciencia e intolerancia que no concuerda con sus actos anteriores como presidenta.

Doña Teófila Ramona y don Rubén podían tener derecho a su reclamo. Eran los dueños de un apartamento afectado por filtraciones provenientes de un área común. Pero no acudieron primero al proceso interno dentro del Condominio. Doña Teófila no ejerció su derecho *"dentro del marco de la sana convivencia"*, Art. 2, *supra.* Tampoco lo ejercitó *"razonable, justa y legítimamente"*, *Soriano Tavárez, supra.* *"Es ilegítimo el ejercicio de*

*un derecho cuando el titular excede manifiestamente los límites impuestos por la buena fe o por el fin social o económico de ese derecho." Velilla, supra.*

## II

En el espíritu de la sana convivencia que busca salvaguardar la Ley de Condominios, la Legislatura dispuso un proceso interno al que se debe acudir antes de someter querellas a un foro judicial o administrativo. No se trata de un proceso jurisdiccional de cuyas resoluciones se pueda acudir en revisión judicial de conformidad con la Ley de Procedimiento Administrativo Uniforme, como planteó la Junta ante DACO. Ese proceso debe ser considerado como directivo, ya que puede ser dispensado —como veremos inmediatamente— cuando así lo amerite el caso. Véase *J. Exam. Tec. Med. v. Elías,* 144 D.P.R. 483, 494 (1997). Es una gestión que la ley requiere que se agote, de ordinario, por el valor estatuido de la sana convivencia, antes de acudir al foro. Si no se demuestra que se llevó a cabo la gestión, el organismo jurisdiccional debe requerir que se agote; a menos que, en ejercicio de su discreción, concluya que el caso amerita otro tratamiento. El proceso requerido está en el Art. 42 (a) (2) de la ley, 31 L.P.R.A., sec. 1293f, el cual dispone:

*"2. Todo titular que presente una querella ante cualquier tribunal o foro pertinente impugnando cualquier acción u omisión de la Junta de Directores, **deberá demostrar que agotó el siguiente procedimiento**.*

*(aa) **Haber solicitado por escrito la dilucidación de su reclamo ante la Junta de Directores y que ésta no atendió sus planteamientos en un plazo de treinta (30) días desde el acuse de recibo de la reclamación**. Esta reclamación deberá presentarse ante la Junta dentro de los treinta (30) días siguientes a la fecha en que se tomó el acuerdo o determinación, si se hizo en su presencia, o dentro de los treinta (30) días siguientes a la fecha en que recibe la notificación del acuerdo, si el titular afectado no estuvo presente en el momento en que se llegó a tal acuerdo o determinación. Si se tratare de una actuación u omisión perjudicial, el plazo para presentar la reclamación, será dentro de los treinta (30) días siguientes a la fecha en que el titular tenga conocimiento de tal actuación u omisión perjudicial.*

*(bb) **La Junta podrá resolver el asunto o someterlo motu proprio al Comité de Conciliación, salvo que el titular haya requerido que su reclamación pase directamente a la consideración de dicho Comité. El Comité deberá resolver el asunto en el término de treinta (30) días desde que le fuera referida la reclamación del titular y en todo caso dentro de un término máximo de sesenta (60) días desde que el titular presentara su reclamo ante la Junta.***

*(cc) **Al presentar su querella, el titular deberá certificar que su reclamación no fue atendida dentro de los términos anteriormente provistos o que la solución propuesta por la Junta o por el Comité de Conciliación le es gravemente perjudicial.***

*El foro competente ante el cual se presente la querella o reclamación podrá eximir al querellante del requisito anterior, **de así ameritarlo la naturaleza del caso.** "* (Énfasis nuestro)

Explica al respecto el profesor Godreau, a la página 39 de su cometario ya citado:

*"Con frecuencia, una Junta de Directores se ve obstaculizada en sus gestiones porque tiene que comparecer ante el DACO para responder por querellas de los titulares. Muchas de las quejas no hubieran tenido que llegar a la agencia, si se hubiera hecho un esfuerzo genuino por discutir el asunto internamente en el condominio. El Art. 42(a) persigue reducir el número de querellas ante el foro administrativo, al requerir del querellante que ventile primero ante los organismos internos del condominio, bien ante la propia Junta o ante un Comité de Conciliación, cualquier querella en la que se cuestione una acción u omisión del Administrador o de la propia Junta. No se trata de un "procedimiento administrativo" con todas las de la Ley, sino de acreditar ante la agencia que se le hizo el planteamiento ante el organismo interno y que éste, o no lo atendió*

*oportunamente, o si lo atendió se ratificó en la acción o en la omisión que el titular entiende le es gravemente perjudicial."*

En este caso, doña Teófila obvió el proceso de recurrir ante la Junta. También había un Comité de Conciliación que fue constituido al final de su incumbencia como presidenta de la Junta, el cual ella ignoró. DACO tenía discreción para eximirla de ese paso *"de así ameritarlo la naturaleza del caso"*. Ahora bien, la discreción requiere más que una mera invocación del poder otorgado. El Tribunal Supremo reiteró su definición de discreción en *Ramírez v. Policía de P.R.,* 158 D.P.R. 320, 340 (2002):

*"Según ha sido definida por este Tribunal, "[l]a discreción, naturalmente, significa, tener poder para decidir de una u otra forma, esto es, para escoger entre uno o varios cursos de acción". No obstante, en el ámbito judicial, dicho concepto no significa poder para actuar de una forma u otra haciendo abstracción del derecho. Razón por la cual reiteradamente hemos expresado que la "discreción es, pues, una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". Su ejercicio está inexorable e indefectiblemente atado al concepto de la razonabilidad."*

En *García Rubiera y otros v. Asociación de Suscripción Conjunta de Seguros de Responsabilidad Obligatorio,* res. el 12 de julio de 2005, **2005 JTS 108**, 164 D.P.R. ___ (2005), el Tribunal Supremo reiteró sus pautas explícitas sobre el abuso de la discreción judicial.

*"[U]n tribunal de justicia incurre en abuso de discreción, entre otras y en lo pertinente, "cuando el juez, en la decisión que emite, **no toma en cuenta e ignora, sin fundamento para_ello, un hecho material importante que no podía ser pasado por alto**; cuando, por el contrario, el juez, sin justificación y fundamento alguno para ello, le concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en el mismo; o cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, **el juez livianamente sopesa y calibra los mismos**".* (Énfasis nuestro).

DACO no podía despachar livianamente las actuaciones de doña Teófila. La Ley de Condominios y la jurisprudencia le requería que examinara el *"contenido de eticidad"* de la actuaciones de ella. Haber dejado pasar años sin resolver, como presidenta de la Junta, los problemas de filtración para —pocos meses después de ser sustituida en el cargo—, demandar a su sucesora para la más urgente reparación de su techo en su propio interés sin considerar la situación económica y las demás prioridades del Condominio, es la definición misma de abuso del derecho. Éste era *"un hecho material importante que no podía ser pasado por alto"*. Es de notar que DACO no hizo una conclusión de la urgencia que justifique *"eximir al querellante del requisito anterior, de así ameritarlo la naturaleza del caso"*; su expresión al respecto es conclusiva sin base de hechos. DACO debió al menos escuchar prueba, no sólo sobre si había filtraciones de mayor o menor impacto, sino también sobre la exigencia de la Ley sobre el ejercicio del derecho de los titulares *"dentro del marco de la sana convivencia (...) conforme a los principios de la buena fe, de la prohibición de ir en contra de sus propios actos y la del abuso del derecho."* De haberlo hecho, hubiese tenido que concluir que había que agotar el proceso interno dispuesto por ley.

### III

Pero la Junta de Directores no recurrió de la decisión de DACO. Optó por cumplir con la orden que la agencia emitiera. Según el acta citada y la transcripción de la vista argumentativa conducida por el Juez de instancia, la Junta acudió al Consejo de Titulares. Le sometió las cotizaciones que obtuvo. Estas cotizaciones tenían varias dificultades discutidas durante el proceso. La primera es que había que remover unas unidades de aire acondicionado en la azotea para poder hacer la reparación. Esto se dificultaba por existir un grave problema con los ascensores. Las compañías de impermeabilización de techos tenían reticencia a cotizar por un trabajo que se tendría que realizar después del tiempo que tome reparar los ascensores. Al final, la Junta accedió a que se le diera sesenta días para pedir nuevas cotizaciones.

El Tribunal, el mismo día, dictó sentencia final. La Junta pidió reconsideración. Las compañías sostenían sus cotizaciones por no más de 60 a 90 días que no coincidían con el tiempo que tomaría resolver el problema de los ascensores. La Junta, entre sus súplicas en solicitud de reconsideración, incluyó:

*"[Que] se desestime la demanda sin perjuicio y se devuelva el caso a la agencia para que una vez se complete la obra de los ascensores reasuma jurisdicción para que la Junta reinicie el trámite contenido en la orden y resolución del 1ro. de diciembre de 2006 y se imponga al DACO las costas del procedimiento habido en el Tribunal."*

Como indicamos, DACO se allanó a esta propuesta. Reconoció que objetivamente existía un problema de prioridades en el Condominio. Sólo se opuso a que se le impusieran las costas del procedimiento. Eso equivale a un desistimiento de la *"demanda y petición"* que DACO había sometido. Al amparo de la Regla 39.1 (b) de las de Procedimiento Civil, 32 L.P.R.A., Ap. III, R. 39.1, el Tribunal de Primera Instancia tenía discreción para permitir o denegar el desistimiento bajo los términos que estimara procedentes. El Tribunal debió examinar los hechos y el derecho para informar el ejercicio de su discreción.

El juez de instancia ignoró la prueba que tenía disponible la Junta para someterla el día de la vista, sobre la situación económica y física del Condominio. Ignoró, *"sin fundamento para ello"*, hechos materiales importantes que no podían ser pasados por alto, *García Rubiera, supra*. Discreción es *"una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera"*. *Ramírez v. Policía de P.R., supra*. La decisión de no aprobar el desistimiento —vistos los hechos y el derecho de este caso, los cuales estuvieron debidamente planteados en las mociones y la vista argumentativa ante el juzgador—, no es razonable ni justiciera.

**IV**

Hemos visto que el remedio que concede la Ley de Condominios, en el Art. 42 (e), 31 L.P.R.A., 1293f (e), cuando no se actúa de buena fe, es la condena al pago de las costas y honorarios de abogado. Se impone a un querellante que abusa de su derecho en la forma aquí analizada. Véase Godreau, *op. cit.* Pero la Junta optó por no pedir la revisión judicial de la decisión de DACO. Era en ese proceso que se podía dilucidar lo del remedio. Como decidió cumplir la orden emitida, renunció a someter sus válidos fundamentos en la Ley de Condominios para exigir el respeto al Consejo de Titulares y a las normas de sana convivencia contenidas en la ley. Ante el desistimiento de DACO de su *"demanda y petición"*, habida cuenta de los actos propios de la Junta al decidir acatar la orden emitida por la agencia, el Tribunal sólo debió desestimar la demanda sin perjuicio. No tenía que ordenar el pago de las costas del litigio.

En virtud de lo expuesto, se revoca la sentencia recurrida y se desestima la demanda sin perjuicio.

Lo acordó el Tribunal y lo certifica la Secretaria.

Lcda. María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones