# 2008 DTA 119

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE BAYAMÓN**
**PANEL VII**

JAIRO CABALLERO RAMÍREZ
Apelado

v.

EDGARDO F. RIVERA MALDONADO
Apelante

Núm. KLAN-07-01336

San Juan, Puerto Rico, a 6 de octubre de 2008

Panel integrado por su Presidente, el Juez Rivera Román,
la Juez Coll Martí y el Juez Vizcarrondo Irizarry

Coll Martí, Juez Ponente

**TEXTO COMPLETO DE LA SENTENCIA**

Comparecen ante este Foro los codemandados, aquí apelantes, Edgar F. Rivera Maldonado y Coral Corporation y nos solicitan la revisión de una *Sentencia* emitida el 18 de junio de 2007, notificada el 26 de junio del mismo año, por el Tribunal de Primera Instancia, Sala Superior de Bayamón. Mediante la referida sentencia, el tribunal recurrido declaró con lugar la demanda presentada por los demandantes de epígrafe.

Estudiado el expediente apelativo de autos, y por los fundamentos que expresamos a continuación, confirmamos la sentencia apelada.

**I**

Los demandantes de epígrafe, los esposos Caballero-Caballero, y los esposos Bravo Portugués, presentaron el 10 de marzo de 2006 una *Demanda* sobre Incumplimiento de Contrato y Daños y Perjuicios contra los apelantes. Como parte de las alegaciones de la demanda, los demandantes alegaron que "*otorgaron un contrato de arrendamiento para dos locales en un Centro Comercial llamado Plaza del Mar Shopping Center localizado en Vega Alta*" propiedad de los apelantes con el propósito de comenzar a operar unos negocios. Las partes estipularon que el comienzo de la operación de los negocios sería para principios del 2006. Específicamente, los esposos Caballero operarían una panadería con restaurante en un local de 2,400 pies cuadrados, y los esposos Bravo, aquí apelados, operarían una lavandería en un local de 2,912 pies cuadrados en el referido centro comercial. Los demandantes arguyeron que los apelantes se obligaron a proveer las facilidades aptas para el establecimiento de los negocios, así como los permisos para la operación de los mismos. En síntesis, los demandantes alegaron que los acuerdos concretados con los apelantes que suponían la operación de los negocios no se cumplieron. A su vez, los demandantes argumentaron que los permisos no fueron conseguidos por la persona que recomendaron los apelantes, y que por ello, las estructuras no fueron acondicionadas para iniciar la operación de los negocios. Adujeron que los apelantes pretendían recibir los pagos de los alquileres sin que los locales estuvieran aptos para operar tal y como habían acordado. Además, los demandantes en su reclamación indicaron que los permisos gestionados por los apelantes resultaron ser cuestionables en cuanto a su autenticidad.

Por su parte, los apelantes presentaron una *Contestación a Demanda,* en la cual plantearon que fueron los apelados quienes incumplieron con el contrato pactado.

Posteriormente, los esposos Caballero presentaron una *Estipulación,* mediante la cual indicaron al tribunal que habían llegado a unos acuerdos con los apelantes que pondría fin al pleito en cuanto a sus reclamaciones. Concretamente, expusieron que comenzarían a pagar los cánones de arrendamiento a partir del 1 de junio de 2006, continuando con el contrato de arrendamiento, y que a su vez, los apelantes condonarían las

mensualidades vencidas. Ante ello, los esposos Caballero presentaron una *Moción de Desistimiento Con Perjuicio* que fue acogida por el tribunal apelado.

Múltiples trámites procesales se suscitaron en la presente causa, destacándose entre éstos una *Sentencia Parcial* emitida el 19 de julio de 2006. Véase, *Sentencia*, folio 54, en Apéndice de Apelación.

Así las cosas, y luego de extenso trámite procesal, el tribunal de instancia emitió una extensa y detallada sentencia mediante la cual determinó que:

*"[e]n el caso de autos aplica la doctrina de descorrer el velo corporativo, ya que el único accionista y dueño de Coral Corporation es Rivera Maldonado. Además, es el tesorero, agente, secretario y director de la misma. No existe evidencia de que Coral Corporation posea una Junta de Directores. Además de todo esto, Rivera Maldonado utilizó a Coral Corporation para evadir la justicia y las obligaciones recíprocas para con los demandantes y para así ganar dinero.*

*Por los fundamentos antes expresados, se dicta sentencia y se resuelve el contrato de las partes, Además, se condena a las partes demandadas de manera solidaria al pago de los daños económicos, por sufrimientos y angustias mentales y una partida para el pago de honorarios de abogados...".*

Inconformes, los apelantes presentaron el recurso de autos e imputaron al tribunal de instancia errar al emitir su sentencia. Los apelantes impugnan la sentencia y recurren a las Reglas de Evidencia, a la doctrina de descorrer el velo corporativo y a la de interpretación de contratos, así como a la adjudicación de prueba.

Contando con la comparecencia de los apelados en *Oposición a Apelación*, estamos en posición de resolver.

## II

### A. El Velo Corporativo

La corporación es una entidad con personalidad jurídica propia y con patrimonio propio, distintos a la personalidad y al patrimonio de los accionistas, sean estas últimas personas naturales o jurídicas. 14 L.P.R.A. § 1106; *D.A.C.O. v. Alturas Fl. Dev. Corp.*, 132 D.P.R. 905, 924 (1993); *Sucn. Santaella v. Srio. de Hacienda*, 96 D.P.R. 442, 451 (1968). Por consiguiente, la responsabilidad de los accionistas por las deudas y obligaciones de la corporación se limita al capital que éstos aporten al patrimonio de la corporación. *Fleming v. Toa Alta Develop. Corp.*, 96 D.P.R. 240, 244 (1968).

Al respecto, el Artículo 12.04 de la Ley de Corporaciones, 14 L.P.R.A. § 3129, dice que:

*"no se entablará pleito alguno contra ningún oficial, director o accionista por deuda u obligación de la corporación de la cual es oficial, director, accionista, hasta que se dicte sentencia final en contra de la corporación, y que la ejecución de la misma permanezca insatisfecha...".* 14 L.P.R.A. § 3129

Es propio señalar que los tribunales descartarán la personalidad jurídica de una corporación y sujetarán el patrimonio de los accionistas para responder por las deudas y obligaciones de la corporación en aquellos casos en los cuales la corporación es meramente un *"alter ego"* o conducto o instrumento económico pasivo de sus únicos accionistas, recibiendo éstos exclusiva y personalmente los beneficios producidos por la gestión corporativa [y] si ello es necesario para evitar un fraude o la realización de un propósito ilegal o para evitar una clara inequidad o mal. *Departamento de Asuntos del Consumidor v. Alturas de Florida Development Corp., supra*, a la pág. 925.

Entonces, una corporación es el *alter ego* o conducto económico pasivo de sus accionistas cuando entre

éstos y la corporación existe tal identidad de interés y propiedad que las personalidades de la corporación y de los accionistas, sean éstos personas naturales o jurídicas, se hallan confundidas, de manera que la corporación no es en realidad una persona jurídica independiente y separada. *Departamento de Asuntos del Consumidor v. Alturas de Florida Development Corp., supra,* a la pág. 925. Cuando un tribunal descarta la personalidad jurídica de una corporación, está rasgando el velo corporativo. Esta doctrina, que es una excepción a la norma de personalidades separadas, procederá cuando el reconocimiento de la personalidad jurídica separada equivalga a: (1) sancionar un fraude; (2) promover una injusticia; (3) evadir una obligación estatutaria; (4) derrotar la política pública; (5) justificar la inequidad, o (6) defender el crimen. *Srio. Departamento de Asuntos del Consumidor v. Comunidad San José, Inc.,* 130 D.P.R. 798 (1992). La aplicación del principio de descorrer el velo corporativo dependerá de los hechos y las circunstancias específicas de la prueba presentada. El peso de la prueba descansa en la parte que propone la imposición de responsabilidad individual a los accionistas y corresponde al Tribunal de Primera Instancia determinar si procede el levantamiento del velo corporativo. *Departamento de Asuntos del Consumidor v. Alturas de Florida Development Corp., supra,* a la pág. 926. Para que se justifique rasgar el velo corporativo, la prueba deberá ser fuerte y robusta. *González v. San Just Corporation,* 101 D.P.R. 168 (1973).

De otra parte, es necesario indicar que los tribunales son muy cautelosos en sostener la entidad corporativa cuando se trata de casos en que todos los accionistas son miembros de una misma familia. *Candal & Company v. Rivera,* 86 D.P.R. 508 (1962). La capacidad de poseer personalidades separadas con el fin de limitar la responsabilidad no es óbice para ocultarse detrás del manto de dicha limitación y cometer actos fraudulentos e ilícitos. Una vez comprendidos los fundamentos de la doctrina, se puede decir que los tribunales desconocerán la existencia de una corporación debidamente organizada, para hacer responsables personalmente de las obligaciones corporativas a los accionistas en dos situaciones principales: (1) cuando exista fraude o la ficción corporativa se desvirtúa y se utiliza como un medio de *"legalizar"* actos ilegales; y (2) cuando la corporación es un mero instrumento, agente o *alter ego* de sus dueños. C. Díaz Olivo, *Corporaciones*, Puerto Rico, Publicaciones Puertorriqueñas, 1999, página 54. Conforme al caso *Departamento de Asuntos del Consumidor v. Alturas de Florida Development Corp., supra,* según discutido por el profesor Carlos Díaz Olivo, entre los factores que se han considerado al determinar si existe una separación adecuada entre las corporaciones y sus accionistas para fines de descorrer el velo corporativo, se encuentran:

*"1. el control de los accionistas sobre los asuntos corporativos,*
*2. el trato de los activos de la corporación como activos personales,*
*3. el retiro irrestricto del capital corporativo,*
*4. la mezcla de activos personales con activos corporativos,*
*5. la estructura de capital inadecuada de la corporación,*
*6. la falta de archivos corporativos,*
*7. la inobservancia de formalidades corporativas,*
*8. la inactividad de los demás oficiales y directores,*
*9. la práctica de no declarar dividendos, y*
*10. la presentación pública del accionista como responsable en su carácter personal por las obligaciones de la corporación y por el manejo de la corporación, sin atención a su personalidad independiente."*

Los tribunales deberán indagar y verificar que la prueba que la parte que solicita descorrer el velo corporativo presente sea clara en cuanto a la confusión de identidades de la corporación con la de los accionistas en sí.

**B. Contratos**

Es principio reconocido que las obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitos en que intervenga cualquier género de culpa o negligencia. Art. 1042, Código Civil,

31 L.P.R.A. sec. 2992. En ese sentido, existe un contrato desde que una o varias personas consienten en obligarse a dar alguna cosa o prestar algún servicio. Art. 1206, Código Civil, 31 L.P.R.A. sec. 3371; *Amador v. Conc. Igl. Univ. de Jesucristo,* 150 D.P.R. 571, 581-582 (2000); *Unisys v. Ramallo Brothers,* 128 D.P.R. 842, 852 (1991). Las partes contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que éstos no sean contrarios a las leyes, a la moral, ni al orden público. Art. 1207 del Código Civil, 31 L.P.R.A. sec. 3372. Los contratos sólo producen efecto entre las partes otorgantes y sus herederos, salvo en cuanto a éstos, el caso en que los derechos y obligaciones que proceden del contrato no sean transmisibles, o por su naturaleza, o por pacto, o por disposición de la ley. Art. 1209 del Código Civil, 31 L.P.R.A. sec. 3374.

Cuando las personas consienten a obligarse en un contrato, éste constituye la ley entre las partes contratantes y las prestaciones deben cumplirse de acuerdo a las cláusulas del mismo. Art. 1044, Código Civil, 31 L.P.R.A. sec. 2994; *Mercado Quilichini v. U.C.P.R.,* 143 D.P.R. 610, 627 (1997). La obligación respecto al contrato no es exclusiva, sino inclusiva. Las partes contratantes no sólo se obligan al cumplimiento de lo expresamente pactado, sino también a todas las circunstancias que sean conforme a la buena fe, al uso y a la ley. Art. 1210 del Código Civil, 31 L.P.R.A. sec. 3375; *González v. Sucn. Cruz,* 163 D.P.R. 449 (2004); *Jarra v. Axxis Corporation,* 155 D.P.R. 764, 772 (2001); *Colondres Vélez v. Bayrón Vélez,* 114 D.P.R. 833, 837 (1983).

Sobre la buena fe contractual es importante destacar que ésta no se manifiesta tan sólo al comienzo del contrato o en la fase de negociación, sino que está presente mientras dure la relación contractual. Asimismo, las partes *"deben adoptar un comportamiento leal en toda fase previa a la constitución de tales relaciones....[y] deben también comportarse lealmente en el desenvolvimiento de las relaciones jurídicas ya constituidas entre ellos."* Banco Popular v. Sucn. Talavera, **2008 JTS 152**; 174 D.R.P. __ (2008).

La existencia de un contrato requiere tres elementos esenciales: (1) el consentimiento de los contratantes, (2) el objeto cierto que sea materia del contrato, y (3) la causa de la obligación que se establezca. Art. 1213 del Código Civil de Puerto Rico, 31 L.P.R.A. §3391; *Quiñones López v. Manzano Pozas,* 141 D.P.R. 139, 154 (1996). Cuando se combinan estos tres requisitos, incluyendo el criterio de una forma determinada en los casos que aplique, los contratos se tornan obligatorios. No obstante, si alguno de estos requisitos no está presente, el contrato podría ser nulo o anulable.

Cuando los términos de un contrato son claros y no dejan dudas sobre la intención de las partes contratantes, se está al sentido literal de sus términos. Art. 1233 del Código Civil, 31 L.P.R.A. sec. 3471; *López v. Atlantic Southern Ins. Co.,* 158 D.P.R. 562 (2003). Los tribunales no deben hacer una interpretación de un contrato que quite efectividad a las cláusulas contractuales válidamente acordadas. *Caguas Plumbing, Inc. v. Continental Const. Corp.,* 155 D.P.R. 744 (2001). Por tanto, al interpretar un contrato se debe presuponer lealtad, corrección y buena fe en su redacción, e interpretarlo para que sus resultados sean conformes a la relación contractual y las normas éticas. En otras palabras, no se puede buscar la oscuridad, ni tergiversar la interpretación de los contratos para llegar a resultados absurdos o injustos. *Irizarry López v. García Cámara,* 155 D.P.R. 713 (2001).

Al momento de determinar la intención de las partes contratantes, se deben considerar los actos anteriores, coetáneos y posteriores al otorgamiento del contrato. Art. 1234 del Código Civil, 31 L.P.R.A. sec. 3472; *Ramírez Senegal & Látimer v. Rojo Rigual,* 123 D.P.R. 161, 174 (1989).

En nuestro ordenamiento jurídico, un acreedor puede dirigirse contra cualquiera de los deudores solidarios o contra todos simultáneamente. Artículo 1097, Código Civil, 31 L.P.R.A. sec. 3108. Las reclamaciones entabladas contra uno de los deudores solidarios no serán obstáculo para las que posteriormente se dirijan contra los demás, mientras no resulte cobrada por completo la deuda, *supra.*

Aunque en la interpretación de los contratos debe partirse de la expresión contenida en sus palabras, el juzgador no puede detenerse en su sentido literal, sino que debe indagar en la intención de las partes, el espíritu y la finalidad que han perseguido éstas con el negocio, infiriéndose de la conducta total de los interesados y de las circunstancias concurrentes que puedan contribuir a la acertada investigación de la voluntad de los otorgantes. *Marcial v. Tomé,* 144 D.P.R. 522 (1997). En nuestra jurisdicción rige la teoría de la subjetividad en la interpretación de los contratos, la cual entraña el indagar cuál fue la voluntad real de las partes con el propósito de que ésta prevalezca. *Unisys v. Ramallo Brothers,* 128 D.P.R. 842, 852 (1991).

## C. Las Reglas de Evidencia y la Apreciación de Prueba

La Regla 16 de Evidencia, 32 L.P.R.A. R. 16, establece en lo aquí pertinente:

"...

*(5) Que toda evidencia voluntariamente suprimida resultará adversa si se ofreciere.*

*(6) Que toda evidencia superior habrá de ser adversa a la presentación de otra inferior."*

De otra parte, y sobre el tema de la revisión judicial, es norma claramente establecida que los foros apelativos no intervendremos con la apreciación y adjudicación de credibilidad que de la prueba testifical hizo el juzgador de los hechos. *López Vicil v. ITT Intermedia, Inc.,* 142 D.P.R. 857, 864-865 (1997). La norma en nuestro ordenamiento jurídico es no intervenir con la apreciación de prueba que haga el foro de instancia en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Monllor Arbola v. Soc. de Gananciales,* 138 D.P.R. 600, 610 (1995). Es doctrina claramente establecida que las determinaciones de hechos, la apreciación de la prueba y adjudicación de credibilidad del tribunal sentenciador merecen gran deferencia y respeto de los foros apelativos. *Mun. de Ponce v. A. C. et al.,* 153 D.P.R. 1, 35 (2000). Corresponde al foro sentenciador aquilatar la prueba testifical ofrecida y dirimir credibilidad. Sin lugar a dudas, el juez que vio y oyó la prueba es quien está en mejor posición para creerla o no creerla. Los tribunales apelativos sólo intervendrán con las determinaciones de hechos y la adjudicación de credibilidad que hizo el Tribunal de Primera Instancia cuando se demuestre pasión, prejuicio o error manifiesto. *Trinidad v. Chade,* 153 D.P.R. 280, 291 (2001); *Pueblo v. Dávila Delgado,* 143 D.P.R. 157, 173 (1997); *Vélez v. Srio. De Justicia,* 115 D.P.R. 533 (1984).

La norma antes expuesta no implica, naturalmente, que los tribunales sentenciadores sean inmunes a cometer errores, ni que sus determinaciones de hechos sean inmutables. Los tribunales apelativos, por vía de excepción, pueden descartar dichas determinaciones cuando las mismas no sean razonablemente representativas de la prueba que desfiló ante el Tribunal de Primera Instancia: *"una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de este Tribunal." Méndez v. Morales,* 142 D.P.R. 26, 36 (1996); *Rivera Pérez v. Cruz Corchado,* 119 D.P.R. 8, 14 (1987).

## III

Ante este Foro, los apelantes alegan que el Tribunal de Primera Instancia incurrió en errores manifiestos en la apreciación de la prueba desfilada. Además, sostienen que fueron los apelados quienes incumplieron el contrato, debido a que éstos no han pagado los cánones de arrendamiento pactados. Del mismo modo, los apelantes arguyen que en la alternativa sería la corporación la responsable ante los apelados y no el accionista en su carácter personal, y que por lo tanto, erró el tribunal al descorrer el velo corporativo. Igualmente, los apelantes atacan la facturación de gastos presentada por los apelados, y su práctica de no utilizar ciertos testigos. No les asiste la razón a los apelantes.

El presente caso amerita que puntualicemos las determinaciones del tribunal de instancia que declararon nulo el contrato suscrito entre las partes. En la sentencia apelada, el foro de instancia estimó que mediante

prueba testifical y documental se justificaba la resolución del contrato y la indemnización de los apelados. Específicamente, el tribunal de instancia determinó que los apelados suscribieron el 8 de septiembre de 2005 un contrato de arrendamiento para operar un negocio de un local de 2,912 en el centro comercial Plaza del Mar, propiedad de los apelantes. Además, el tribunal de instancia estableció que:

*"El contrato de arrendamiento establecía 75 días de gracia para que el arrendatario, aquí demandante, comenzara a pagar los cánones de arrendamiento, término que comenzaría a transcurrir desde que el arrendatario obtuviera el pleno disfrute del inmueble arrendado."*

Rivera Maldonado, a través de Coral Corporation, se obligó a proveer el local comercial con todas las facilidades comunes terminadas, así como entregar el Permiso de Uso del Centro Comercial, de manera que cada arrendatario pudiera establecer su negocio y obtener sus Permisos de Construcción y de Uso respectivamente, y así gestionar con las agencias pertinentes los endosos requeridos, antes de que concluyera el período de los 75 días.

Además, los demandados Rivera Maldonado y/o Coral Corporation se comprometieron en terminar las facilidades comunes dentro del tiempo que cada arrendatario tenía para terminar los trabajos individuales en el local arrendado.

El Sr. Rudy Tomasen testificó que fue contratado por los esposos Bravo-Portuguéz para efectuar dichos trabajos.

*"Según Tomasen, la razón por la cual él nunca pudo terminar los trabajos para los cuales fue contratado por los demandantes, fue debido a que para el mes de enero de 2006, el centro comercial todavía no tenía las facilidades de agua, electricidad, gas y teléfono disponibles, por lo que se hacía imposible llevar a cabo las pruebas de los equipos instalados en el local."*

Más adelante, en la sentencia, el tribunal apelado detalla todas las gestiones y los gastos en el que incurrieron los apelados por los atrasos de los trabajos en el centro comercial y por los incumplimientos de los apelantes. El tribunal puntualizó los testimonios de varios testigos que certificaron que los atrasos sufridos se debieron a la falta de diligencia de los apelantes. Véase, *Sentencia*, folio 212, en Apéndice de Apelación.

El tribunal de instancia detalló que los apelantes le recomendaron a los apelados la contratación de la Sra. Carmen Colón -a quienes presentaron como arquitecta- para que diseñara los planos del local y agilizara los permisos de construcción y de uso. De la sentencia trasciende que la Sra. Colón informó a los apelados que el permiso de uso del centro había sido expedido por ARPE. El referido permiso no fue entregado a los apelados.

Surge de la sentencia que mediante comunicación cursada por los apelantes a los apelados se reclamaba el pago de los cánones de arrendamiento desde diciembre de 2005 hasta enero de 2006. Según testimonio admitido por el tribunal de instancia, la falta de pago de los apelados respondía a que los trabajos en el local no se habían terminado, que no era posible la utilización de la propiedad arrendada, y que además, el local no contaba aún con agua ni electricidad. Específicamente, el tribunal sentenciador determinó que debido a que los apelados *"no podían usar la cosa para el uso destinado por causas atribuibles a Rivera Maldonado, no pagarían los cánones de arrendamiento solicitados"*. El tribunal estableció claramente, conforme la credibilidad otorgada a los testimonios de los apelados, que los apelantes presionaron a éstos para que abrieran el local utilizando energía de otro contador.

El tribunal de instancia, conforme la prueba presentada, determinó que las facilidades del centro comercial para fines de enero de 2006 no contaban con agua, electricidad, gas ni teléfono, tampoco contaban con permiso de uso.

Sin embargo, surge de la sentencia que en febrero de 2006 los apelantes y la Sra. Colón entregaron a los apelados unos permisos de construcción de ARPE. Los apelados, según se detalla en la sentencia, fueron a ARPE y verificar la autenticidad de los permisos y resultó que el permiso no fue expedido por esa agencia gubernamental. Véase, Sentencia, folios 216-217. Surge de autos que el empleado de ARPE, el Sr. Víctor Villegas Correa, y quien atendió la reclamación los apelados ante la agencia, testificó en el juicio en su fondo.

El Tribunal de Primera Instancia claramente determinó que:

*"Rivera Maldonado pretendió que los demandantes operasen de forma ilegal en el lugar, exigiendo el pago de la renta, todo ello sin haber cumplido con sus obligaciones contractuales y sin que para dicha fecha, sus respectivos permisos hubieran sido expedidos, alegando, entre otras cosas, que aunque no entregaba el Permiso de Uso del Centro Comercial, el mismo existía y la Sra. Colón lo tenía.*

*Durante el testimonio de Rivera Maldonado, éste guardó silencio en cuanto a los documentos falsificados, no rebatiendo lo alegado por los demandantes. Nos merece, pues, credibilidad el testimonio de los demandantes sobre este extremo."*

El tribunal también precisó en la sentencia que los apelantes insistían en cobrar los cánones de arrendamiento a los apelados, y que incluso, presentaron unas reclamaciones de desahucio las cuales fueron desestimadas. El tribunal apelado estableció que los apelados nunca llegaron a tener posesión plena del local arrendado. Ante este Foro, los apelantes pretenden atacar la apreciación de prueba realizada por el tribunal de instancia. Sin embargo, no presentan alegaciones específicas que contradigan las determinaciones de hechos y de derecho que realizó el tribunal. Sus argumentos generalizados no logran derrotar las determinaciones del tribunal de instancia, ni la prueba presentada por los apelados. No podemos olvidar que es norma jurídica firmemente establecida que los tribunales apelativos no deben sustituir su criterio por el del tribunal sentenciador, salvo que se demuestre que dicho foro actuó con prejuicio o parcialidad, incurrió en arbitrariedad o abuso de discreción o se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Lluch v. España Services Sta., supra,* a la pág. 745. De los autos no surge prueba que acredite que el tribunal sentenciador actuó con pasión, prejuicio, parcialidad, error manifiesto, arbitrariedad, abuso de discreción, error en la interpretación o aplicación de las normas jurídicas pertinentes, por lo que este foro no intervendrá con la sentencia.

Claramente trasciende que el contrato suscrito entre las partes fue incumplido por los apelantes. Por ello, concluimos que las determinaciones de hechos del tribunal de instancia están sostenidas por la prueba presentada por los demandantes.

El tribunal de instancia estimó que el contrato era nulo debido a que se configuró dolo por parte de los apelantes en el cumplimiento del contrato. Estimamos correcta tal determinación.

En *Canales v. Pan American*, 112 D.P.R. 329 (1982), se señala que el dolo en el cumplimiento de las obligaciones se equipara con la mala fe y se compone de dos elementos: el intelectual o conciencia de una actuación inconforme y el volitivo o voluntad de actuar de dicho modo inconforme. El dolo, en el incumplimiento contractual, es la negativa consciente y voluntaria del deudor a cumplir su obligación, sabiendo que realizará un acto injusto. *Mayagüez Milton Corp. v. Betancourt*, 156 D.P.R. 234 (2002); *Canales v. Pan American, supra; Márquez v. Torres Campos*, 111 D.P.R. 854 (1982).

Ello supone que el obligado tenga conocimiento de la obligación que sobre él pesa, del acto o abstención que va a realizar y de las consecuencias que ello produce. *"Es decir, el dolo no implica, necesariamente, un designio malévolo del deudor, sólo conocimiento del hecho de su propio incumplimiento, consciente de que ha de afectar la expectativa del acreedor." Mayagüez Hilton v Betancourt, supra.*

*"Tanto bajo el dolo en la formación del contrato..., como en el dolo en el cumplimiento de la obligación corresponde a quien reclama dicha conducta dolosa la responsabilidad de la prueba"*. Colón v. Promo Motors Imports, Inc., 144 D.P.R. 659 (1997); *Canales v. Pan American, supra*. Es una cuestión de hecho que no se sustenta con la mera alegación del reclamante, sin que haga falta aportar prueba, la cual deberá ser valorada exclusivamente por el juez de instancia. *Mayagüez Hilton Corp. v. Betancourt, supra*, citando A. De Cossio y Corral, *El Dolo en el Derecho Civil*, Madrid, 1955, pág. 353; J. Manresa, *Comentarios al Código Civil Español*, Madrid, 1967, T. VIII, Vol. I, pág. 218.

El foro sentenciador adujo que la negativa de los apelantes y de sus empleados:

*"a darle permiso de uso a los demandantes y luego entregarles unos permisos falsos constituye...dolo en el cumplimiento contractual, ya que al actuar de esta manera, incumplieron con su obligación contractual de brindarles los permisos de uso del Centro Comercial Plaza del Mar Shopping Center, para que los arrendatarios pudiesen obtener los suyos, causando así un atraso en el proceso y graves daños tanto a la reputación de los demandantes como a los trabajos y tiempo invertido por éstos con la expectativa de poder correr su negocio en el local arrendado."*

Ante ello, el tribunal de instancia estipuló que se cometió dolo grave [1] que anulaba el contrato objeto de esta controversia. Coincidimos con la interpretación del tribunal de instancia, dado el hecho de que los actos intencionales cometidos por los apelantes, desde la falsificación de los permisos, la obstrucción con el acceso de los apelados al local, hasta la tramitación inconclusa de los permisos, configuraron, claramente, un dolo grave en el cumplimiento de las obligaciones que anularon el contrato.

De otra parte, los apelantes arguyen que erró el tribunal de instancia al no traer a declarar ciertos testigos, a saber, a la Gerente del Banco Popular, Mayra Medina, quien autenticaría cierta evidencia y a los esposos Caballero-Caballero. Sucintamente, los apelantes aducen que los testigos no fueron puestos a su disposición y que ello resultaría prueba adversa a su causa. Sin embargo, trasciende que el tribunal atendió tal reclamo. De la sentencia trasciende que el tribunal de instancia fue advertido por los apelados que la gerente del banco sería utilizada para autenticar ciertos documentos, pero que ésta no se encontraba trabajando ya para el Banco Popular, por lo que trajeron a la actual gerente para los mismos fines. Surge de la sentencia que:

*"[l]a parte demandada no solicitó su presencia, por lo que no procede aplicar la presunción en cuanto a la testigo mencionada."*

Sobre los testimonios de los esposos Caballero, transciende que la declaración jurada sobre su indisponibilidad no fue impugnada por los apelantes. En su escueto argumento ante nos, los apelantes tampoco derrotan la determinación del foro de instancia de que la incomparecencia de los esposos Caballero no se debió a la voluntad de los apelados.

Por otro lado, los apelantes alegan que no es correcto que se emita una sentencia en contra de un oficial o accionista en su carácter personal. En términos generales, la alegación sería correcta. Sin embargo, en el caso de autos aplica la doctrina de descorrer el velo corporativo debido a que el tribunal de instancia determinó que:

*"[l]os hechos demuestran que Rivera Maldonado, en su carácter personal, era el dueño y desarrollador de Plaza del Mar Shopping Center y que conforme a ello, era él quien pautaba las reglas en el centro comercial. Más aún, que actuando a través de la corporación, interfirió con el disfrute de los demandantes de la propiedad arrendada; negándoles el permiso de uso, impidiéndoles la entrada a la misma, presentando dos acciones de desahucio que resultaron improcedente y causando daños. Es por ello que se procede a descorrer el velo corporativo."*

El tribunal de instancia correctamente estableció que aplicaba por excepción descorrer el velo corporativo en el presente caso. Conforme el derecho antes citado, entendemos que la determinación del tribunal de instancia fue acertada, debido a que la actuación de Sr. Rivera Maldonado es precisamente lo que la doctrina corporativa pretende sancionar. Las actuaciones de Rivera Maldonado, quien pretendía escudarse detrás de la corporación Coral para adelantar fines puramente personales, no deben permitirse en nuestro ordenamiento jurídico. Como dijéramos, los tribunales descartarán la personalidad jurídica de una corporación y sujetarán el patrimonio de los accionistas para responder por las deudas y obligaciones de ésta en aquellos casos en los cuales la corporación es meramente un *"alter ego"* o conducto o instrumento económico pasivo de sus únicos accionistas, recibiendo éstos exclusiva y personalmente los beneficios producidos por la gestión corporativa [y] si ello es necesario para evitar un fraude o la realización de un propósito ilegal o para evitar una clara inequidad o mal. *Departamento de Asuntos del Consumidor v. Alturas de Florida Development Corp., supra.*

Por último, precisa destacar que coincidimos con lo expuesto por el tribunal de instancia en su sentencia sobre las actuaciones indebidas y constitutivas de mala fe de los apelantes. Específicamente, el tribunal *a quo* expresó que:

*"Debemos señalar que la conducta de mala fe demostrada por los demandados al proveer documentación falsa y cerrar las puertas del negocio prohibiendo al demandante mitigar los daños ya causados y a su vez, prohibiendo al demandante la posesión física o material del mismo, junto con el peregrinaje judicial de Coral Corporation, en las diversas salas de Bayamón y del Honorable Tribunal de Apelaciones, en búsqueda de un decreto que le favoreciera en contra de los demandantes, constituye un abuso del derecho."*

Este Tribunal tampoco puede avalar las actuaciones impropias de los apelantes que inciden en la ya maltrecha economía de los apelados, y además, ponen en marcha todo un ordenamiento jurídico, desde el nivel de instancia hasta los tribunales revisores, para atender un reclamo que fue desde el primer momento resuelto por el tribunal de instancia. El tribunal de instancia aludió a la doctrina del abuso del derecho para cuestionar las actuaciones de los apelantes. La referida doctrina se fundamenta en que los derechos deben ejecutarse conforme a las exigencias de la buena fe y que la ley no ampara el ejercicio antisocial de un derecho. *Soriano Tavárez v. Rivera Anaya,* 108 D.P.R. 663, 667-668 (1979). Esta doctrina tiene como objetivo el impedir que el texto de la ley sea utilizado para amparar actos contrarios a la realización de la justicia; que frente al contenido ético y al espíritu objetivo de la norma legal, no prevalezcan las maniobras tendentes a lograr un resultado distinto al perseguido por ella. Es ilegítimo el ejercicio de un derecho cuando el titular excede manifiestamente los límites impuestos por la buena fe o por el fin social o económico de ese derecho. *Velilla v. Pueblo Supermarkets, Inc.,* 111 D.P.R. 585, 588·(1981).

## IV

Por los fundamentos que expresamos anteriormente, confirmamos la sentencia apelada en todos sus extremos.

Lo acuerda y manda este Tribunal y lo certifica la Secretaria.

María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones

### ESCOLIO 2008 DTA 119

**1.** Para que prospere una causa de acción de nulidad contractual por dolo grave es necesaria la concurrencia de los siguientes factores: (1) que el contratante promovente de la acción haya sufrido error, es decir, engaño; (2) que éste sea consecuencia de las maquinaciones insidiosas del otro contratante, realizadas con la intención o propósito de perjudicarlo; (3) que el dolo empleado sea grave; y (4) la existencia de nexo causal entre el fraude o engaño doloso y la efectiva celebración del contrato. J. Puig Brutau, *Fundamentos del Derecho Civil,* Ed. Bosh, Barcelona, 1954, T. II, Vol. I, págs. 123-127. El dolo grave puede cometerse mediante el empleo de palabras o maquinaciones insidiosas o bien callando respecto a una condición esencial del contrato. *Márquez v. Torres Campos,* 111 D.P.R. 854 (1982).